NEWSOME v BOARD OF STATE CANVASSERS

(NEWSOME v RILEY)

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—INITIATION OF
    LEGISLATION—PETITIONS—SECRETARY OF STATE—SUBSTANTIAL
    COMPLIANCE—INFORMATORY PURPOSE.

Petitions for the initiation of legislation which were submitted to
and approved by the Secretary of State prior to circulation and
which substantially complied with constitutional and statutory
initiative provisions were valid even where technical noncom-
pliance was shown with a statute passed to meet the stringent
technical petition requirements of the no longer effective Con-
stitution of 1908; the initiative power should not be hamstrung
by technical petition requirements which have no bearing on
the informatory purpose of a petition (Const 1963, art 2, § 9,
MCLA 168.482, 168.544d; MSA 6.1482, 6.1544[4]).

2. CONSTITUTIONAL LAW—LEGISLATURE—SELF-EXECUTING PROVISIONS
    —ADDITIONAL BURDEN.

The Legislature may not act to impose additional obligations on a
self-executing constitutional provision so as to curtail or place
undue burdens on a right guaranteed by the provision.

3. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—INITIATION OF
    LEGISLATION—AMENDMENTS—LIMITATION OF ACTIONS—STATU-
    TORY LIMITATIONS.

The constitutional requirement that petitions for amendment be
filed at least 120 days before the election at which the amend-
ment will be voted upon applies only to constitutional amend-
ments; laws proposed by initiative petitions are subject to
shorter constitutional and statutory limitations (Const 1963, art
12, § 2, Const 1963, art 2, § 9, MCLA 168.477; MSA 6.1477).

4. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—INITIATION OF
    LEGISLATION—PETITIONS—RETURNABLE CONTAINERS—TITLE-OB-
    JECT CLAUSE—NECESSARY PRECLUSION.

A title in a petition for initiation of legislation which described

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–7] 42 Am Jur 2d, Initiative and Referendum § 21 et seq.
[2] 16 Am Jur 2d, Constitutional Law §§ 94, 95.

the legislation as providing for the use of returnable containers was not defective for failing to describe the proposal in the body which called for a ban on the use of nonreturnable containers; where present law already permits the use of returnable bottles, legislation providing for the use of returnables would necessarily preclude the use of nonreturnables.

DISSENT BY D. E. HOLBROOK, JR., J.

5. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—PROPOSED LEGISLATION—APPELLATE REVIEW—ENACTMENT—REQUIREMENTS FOR SUBMISSION—MANDAMUS.

*The constitutionality of a law proposed by an initiative petition is not determined by the Court of Appeals prior to its enactment, but the Court may determine, in cases properly presented, whether the requirements for submission of the petition to the people have been met, and mandamus will issue to prevent such submission when compliance is lacking.*

6. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—TITLE-OBJECT CLAUSE—PETITIONS TEST—REASONABLE MINDS—INTENT OF PETITION.

*The section of the Constitution of 1963 providing that no law shall embrace more than one object which shall be stated in its title was drafted (1) to prevent the citizenry from signing initiative petitions not fully understood, (2) to fairly notify the signatories of an initiative petition of a proposed statute's design, (3) and to aid the signatories in understanding that only subjects germane to the title would be included in the proposed legislation; the test to be applied is whether the title fairly indicates to a reasonable and inquiring mind the general scope, intent, and purpose of the proposed law (Const 1963, art 4, § 24).*

7. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—PETITIONS—TITLE-OBJECT CLAUSE—RETURNABLE BOTTLES—PROVIDING FOR USE—PROHIBITING USE.

*The title in a petition to initiate legislation which states that the proposed legislation is to* provide for the use *of returnable containers does not adequately indicate to a reasonable and inquiring mind the general scope, intent and purpose of the proposed legislation where its actual purpose is to* prohibit the sale *or distribution of beverages in nonreturnable containers and to provide criminal penalties for violation of the proposed act.*

Original action in the Court of Appeals. Submitted July 1, 1976, at Lansing. (Docket No. 28962.) Decided July 14, 1976. Leave to appeal denied, 397 Mich 833.

Complaint by Otis Newsome and others similarly situated against Wallace Riley and others as members of the Board of State Canvassers for mandamus to prevent the certification of initiatory petitions. Intervention by Thomas L. Washington and others as defendants. Writ denied.

*Downs & Edwards* (by *Tom Downs, James M. Edwards* and *John D. Pirich),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendants.

*Peter Steketee,* for intervening defendants.

Before: QUINN, P. J., and T. M. BURNS and D. E. HOLBROOK, JR., JJ.

QUINN, J. By this original action for mandamus, plaintiffs seek to prevent defendant Board of State Canvassers from certifying initiatory petitions. Intervening defendants participated in the circulation of the petitions which proposed legislation requiring the use of returnable and banning the use of nonreturnable beverage containers.

Plaintiffs' complaint contains three counts, the first of which alleges that the petitions are statutorily deficient for noncompliance with MCLA 168.482; MSA 6.1482. The statute relied on reads in pertinent part:

"The size of all petitions mentioned in this section shall be 8-1/2 inches by 13 inches. If the measure to be

submitted proposes * * * initiation of legislation * * * ,
*the heading of each part* of the petition shall be pre-
pared * * * and printed in capital letters in 14-point
bold face type:

*       *       *

INITIATION OF LEGISLATION
*       *       *

The full text of the amendment so proposed shall
follow, printed in 8-point type." (Emphasis added.)

The statutory deficiency asserted by the complaint
is that the petitions do not have the heading
"Initiation of Legislation" above the body of the
proposed language. This assertion is true, but on
the side of the petition used for signatures "initia-
tion of legislation" appears three times as well as
the statement "The full text of the proposed Act
appears on the reverse side of this petition", in
dark print. (See Appendix.)

Plaintiffs have demonstrated technical statutory
noncompliance under MCLA 168.482; MSA 6.1482
but what is the effect of later statute, MCLA
168.544d; MSA 6.1544(4)? It reads:

" * * * petitions for * * * initiation of legislation
* * * may be circulated countywide. Petitions so circu-
lated shall be on a form prescribed by the secretary of
state, which form shall be substantially as provided in
sections 482 and 544c. The secretary of state may
provide for a petition form larger than 8 1/2 inches by
13 inches and shall provide for identification of the city
or township in which the person signing the petition is
registered. The certificate of the circulator may be on
the reverse side of the petition."

In answering this rhetorical question, we note
three things. First, Const 1908, art 5, § 1 spelled
out in detail the requirements for an initiatory

petition. Second, MCLA 168.482; MSA 6.1482 was passed under that constitution and it has not been amended. That statute represents the attempt of the Legislature to comply with the detailed requirements of the 1908 constitutional provision. Third, Const 1963, art 2, § 9 reserves the power of initiative to the people, but it does not specify the details of the petition. Instead, it leaves to the Legislature the obligation of implementing the section.

We infer from the foregoing a recognition on the part of the drafters and adopters of the Constitution of 1963 that, to be useful and readily available, the initiative power should not be hamstrung by technical petition requirements which have no bearing on the informatory purpose of the petition. By the passage of MCLA 168.544d; MSA 6.1544(4) the Legislature implemented this recognition, and we hold that MCLA 168.544d; MSA 6.1544(4) is applicable to the petitions before us.

The form of the petition was submitted to and approved by the Secretary of State prior to circulation. The petition informs the signers thereof that it is a petition to initiate legislation which is set forth on the petition. This is substantial compliance and we find the form of the petitions valid. Constitutional and statutory initiative and referendum provisions should be liberally construed to effectuate their purposes, to facilitate rather than hamper the exercise by the people of these reserved rights, *Kuhn v Department of Treasury,* 384 Mich 378; 183 NW2d 796 (1971).[1]

---

[1] Even if the instant petition failed to comply substantially with the statute, it is doubtful that such would render the petition fatally defective. The Legislature may not act to impose additional obligations on a self-executing constitutional provision so as to curtail or place undue burdens on a right guaranteed by the provision. *Wolverine Golf Club v Secretary of State,* 384 Mich 461; 185 NW2d 392 (1971).

Based on the provisions of Const 1963, art 12, § 2, plaintiffs contend that the petitions were not filed timely. The filing was June 4, 1976, and the next general election falls on November 2, 1976. By adding the 120-day requirement of Const 1963, art 12, § 2 to the 40 days found in Const 1963, art 2, § 9, plaintiffs argue that the petitions must be filed 120 days prior to election. If the argument is sound, the last filing date was May 26, 1976. The argument is not sound because Const 1963, art 12, § 2 applies only to petitions for constitutional amendment. In this case, we are only concerned with the 40 days found in Const 1963, art 2, § 9 and the two-months limitation found in MCLA 168.477; MSA 6.1477. Both limitations can be met after the June 4, 1976, filing. The petitions were timely filed.[2]

It is plaintiffs' position that the petitions failed constitutionally because if they contain a title, it embraces more than one object. On the authority of *Beechnau v Secretary of State,* 42 Mich App 328; 201 NW2d 699 (1972), we decline to pass on this question prior to submission of the proposed legislation of the people. We note parenthetically that the plaintiffs' reliance upon *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947), is misplaced. The holding there rested upon a specific provision of the Constitution of 1908. The Constitution of 1963 retains no such provision. Furthermore, the petition in *Leininger* contained no title whatsoever. The petition before us is in fact headed by a clear statement of the object of the proposed measure. Moreover, the Supreme Court has specifically disapproved of *Leininger, supra,* see *Kuhn, supra.*

---

[2] The language in *Wolverine Golf Club v Secretary of State,* 24 Mich App 711, 728–729; 180 NW2d 820 (1970), relied on by plaintiffs, is a discussion of amendments to the constitution pursuant to Const 1963, art 12, § 2. It is not applicable to initiative petitions.

Plaintiffs also assert that the alleged title is defective because it is not descriptive of the proposal. This argument is based on the fact that the alleged title provides for the use of returnable containers and in the body of the proposal is a provision banning the use of nonreturnable containers. Plaintiffs refute their own argument when they assert in their brief, "[p]resent law *permits* the use of returnable bottles and merchants and consumers have a full choice of using returnable or nonreturnable bottles". Legislation requiring the use of returnable containers necessarily precludes the use of nonreturnables when both are presently permitted.

The fact that we have accepted this case for argument and decision is sufficient response to plaintiffs' final argument that mandamus is an appropriate remedy in this case.

Finally, intervening defendants' attack on the standing of plaintiffs is disposed of by MCLA 168.479; MSA 6.1479.

Writ denied but without costs because of the public question.

T. M. BURNS, J., concurred.

# APPENDIX A

## THE PEOPLE OF THE STATE OF MICHIGAN ENACT:

Sec. 1. As used in this act

(a) "Beverage" means a soft drink, soda water, carbonated natural or mineral water, or other nonalcoholic carbonated drink; beer, ale, or other malt drink of whatever alcoholic content

(b) "Beverage container" means an airtight metal, glass, paper, or plastic container, or a container composed of a combination of these materials, which, at the time of sale, contains 1 gallon or less of a beverage

(c) "Returnable container" means a beverage container upon which a deposit of at least 10 cents has been paid, or is required to be paid upon the removal of the container from the sale or consumption area, and for which a refund of at least 10 cents in cash is payable by every dealer or distributor in this state of that beverage in beverage containers, as further provided in section 2. A beverage container certified as provided in section 3 shall also be deemed a returnable container if the deposit is at least 5 cents, and the requirements of the preceding sentence are met in all other respects

(d) "Nonreturnable container" means a beverage container upon which no deposit or a deposit of less than 10 cents has been paid, or is required to be paid upon the removal of the container from the sale or consumption area, or for which no cash refund or a refund of less than 10 cents is payable by a dealer or distributor in this state of that beverage in beverage containers, as further provided in section 2. A beverage container certified as provided in section 3 shall not be deemed a nonreturnable beverage container if the deposit is at least 5 cents, and the requirements of the first sentence of subdivision (c) of this section are met in all other respects.

(e) "Person" means an individual, partnership, corporation, association, or other legal entity.

(f) "Dealer" means a person who sells or offers for sale to consumers within this state a beverage in a beverage container, including an operator of a vending machine containing a beverage in a beverage container.

(g) "Operator" of a vending machine means equally its owner, the person who refills it, and the owner or lessee of the property upon which it is located

(h) "Distributor" means a person who sells beverages in beverage containers to a dealer within this state, and includes a manufacturer who engages in such sales

(i) "Manufacturer" means a person who bottles, cans, or otherwise places beverages in beverage containers for sale to distributors, dealers, or consumers.

(j) "Within this state" means within the exterior limits of the state of Michigan, and includes the territory within these limits owned by or ceded to the United States of America.

(k) "Commission" means the Michigan liquor control commission

(l) 'Sale or consumption area" means the premises within the property of the dealer or of his lessor where the sale is made, within which beverages in returnable containers may be consumed without payment of a deposit, and, upon removing a beverage container from which, the customer is required by the dealer to pay the deposit.

Sec. 2 (1) A dealer shall not, within this state, sell, offer for sale, or give to consumers a nonreturnable container or a beverage in a nonreturnable container

(2) A dealer who regularly sells beverages for consumption off his premises shall provide on his premises, or within 100 yards of the premises on which he sells or offers for sale a beverage in a returnable container, a convenient means whereby the containers of any kind, size, and brand sold or offered for sale by him may be returned by, and the deposit refunded in cash to, a person whether or not the person is the original customer of that dealer, and whether or not the container was sold by that dealer.

(3) Regional centers for redemption of returnable containers may be established in addition to, but not as substitutes for, means for refund of deposits in accordance with subsection (2).

(4) A dealer shall not refuse to accept from a person an empty returnable container of any kind, size, and brand sold by that dealer, nor refuse to pay to the person its full refund value in cash, except as provided in subsections (5) and (7).

(5) A dealer who does not require a deposit on a returnable container when the contents are consumed in the dealer's sale or consumption area shall not be required to pay a refund for accepting that empty container.

(6) A distributor shall not refuse to accept from a dealer an empty returnable container of any kind, size, and brand sold by that distributor, nor refuse to pay to the dealer its full refund value in cash, except as provided in subsection (7).

(7) Every beverage container sold or offered for sale by a dealer within this state shall clearly indicate by embossing or by a stamp, or by a label or other method securely affixed to the beverage container, the refund value of the container and the name of this state. A dealer or distributor may, but is not required to, refuse to accept from a person an empty returnable container which does not state thereon the refund value of the container and the name of this state

(8) A dealer within this state shall not sell, offer for sale, or give to consumers a metal beverage container, any part of which becomes detached when opened.

Sec. 3. (1) To promote the use in this state of reusable beverage containers of uniform design, and to facilitate the return of containers to manufacturers for reuse as a beverage container, the commission shall certify beverage containers which satisfy the requirements of this section.

(2) A beverage container shall be certified if

(a) It is reusable as a beverage container by more than 1 manufacturer in the ordinary course of business.

(b) More than 1 manufacturer will in the ordinary course of business accept the beverage container for reuse as a beverage container and pay the refund value of the container.

(3) The commission shall not certify more than 1 beverage container of a particular manufacturer in each size classification. The commission shall by rule establish appropriate size classifications, each of which shall include a size range of at least 3 liquid ounces.

(4) A beverage container shall not be certified under this section:

(a) If by reason of its shape or design, or by reason of words or symbols permanently inscribed thereon, whether by engraving, embossing, painting, or other permanent method, it is reusable as a beverage container in the ordinary course of business only by a manufacturer of a beverage sold under a specific brand name

(b) If the commission finds that its use by more than 1 manufacturer is not of sufficient volume to promote the purposes set forth in subsection (1)

(5) Unless an application for certification under this section is denied by the commission within 60 days after the application is filed, the beverage container shall be deemed certified

(6) The commission may at any time review certification of a beverage container If, upon the review, after written notice and hearing afforded to the person who filed the original application for certification of the beverage container under this section, the commission determines that the beverage container is no longer qualified for certification, it shall withdraw certification. Withdrawal of certification shall be effective on a date specified by the commission, but not less than 30 days after written notice to the person who filed the original application for certification of the beverage container under this section, and to the manufacturer referred to in subsection (2).

Sec 4 A dealer, distributor, or manufacturer who violates this act shall be fined not less than $100.00 nor more than $1,000.00 and costs of prosecution Every day a violation occurs is a separate offense

Sec 5 Act No 142 of the Public Acts of 1971, being section 445 191 of the Compiled Laws of 1970, is repealed

Sec. 6. This act shall take effect two years after it becomes law.

APPENDIX A

INITIATION OF LEGISLATION

A petition to initiate legislation to provide for the use of returnable containers for soft drinks, soda water, carbonated natural or other non alcoholic carbonated drinks; beer, ale or other malt drink of whatever alcoholic content.    (The full text of the proposed Act appears on the reverse side of this petition.)

We the undersigned qualified and registered electors, residents in the county of _____ State of Michigan, hereby respectively petition for said initiation of legislation.

**WARNING**

Whoever knowingly signs this petition more than once, signs a name other than his own, signs when not a qualified and registered elector, or sets opposite his signature on a petition, a date other than the actual date such signature was affixed, is violating the provisions of the Michigan Election Law.

| INDICATE CITY OR TOWNSHIP IN WHICH REGISTERED TO VOTE | NAME | STREET NO. (IN CITIES AND TOWNSHIPS HAVING STREET NOS. OTHERWISE R. R. NO.) | POST OFFICE | DATE OF SIGNING | | |
|---|---|---|---|---|---|---|
| | | | | MONTH | DAY | YEAR |
| CITY OF ☐ TOWNSHIP OF ☐  1 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  2 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  3 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  4 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  5 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  6 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  7 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  8 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  9 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  10 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  11 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  12 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  13 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  14 | | | | | | |
| CITY OF ☐ TOWNSHIP OF ☐  15 | | | | | | |

**CERTIFICATE OF CIRCULATOR**

I, the circulator of this petition, assert that I am qualified to circulate this petition, that each signature on the petition was signed in my presence, that to my best knowledge and belief each signature is the genuine signature of the person purporting to sign the same and that the person was at the time of signing a qualified registered elector of the city or township indicated preceding the signature and that the elector was qualified to sign the petition

_____
(SIGNATURE OF CIRCULATOR)

_____
(CITY OR TOWNSHIP WHERE REGISTERED)

_____
COMPLETE ADDRESS (STREET AND NUMBER OR RURAL ROUTE ) POST OFFICE

_____
(DATE)

WARNING — Any circulator knowingly making a false statement in the above certificate or any person not a circulator who signs as such or any person who signs a name other than his own as circulator is guilty of a misdemeanor.

CIRCULATOR – Do not sign or date certificate until after circulating petition.

**INSTRUCTION TO CIRCULATORS**

A circulator must be a registered voter in Michigan. A circulator must not sign a petition until after all of the signatures he intends to obtain have been affixed to the petition. The name of the county in which the petition is circulated must be entered by the circulator in the blank provided. Women signing the petition should be instructed to use the signatures they would employ on any legal document (e.g., Mary Doe    not    Mrs. John Doe).

NOTE: All sheets of the petition must be registered voters of the county designated on the petition. Note: Sign and return all petitions even if not fully completed to MUCC, Box 2235, Lansing 48911, PH 517-371-1041.

D. E. Holbrook, Jr., J. *(dissenting).*

## I.

I dissent. In the first place plaintiffs do not contend that the petitions fail constitutionally because the title, if any there be, embraces more than one object but because the object of the proposed legislation is not contained in the purported title. *Beechnau v Secretary of State,* 42 Mich App 328; 201 NW2d 699 (1972), was therefore improperly cited as being authority in the instant case. In any event, I am of the opinion that *Beechnau* was erroneously decided.

While it is true that in *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947), the proposed initiative petitions did not contain a title and hence were invalid, I am of the opinion that the result in *Leininger* would have been the same had the initiative petitions therein contained a title which did not express the object of the proposed law.

Nor am I of the opinion that the Supreme Court's denial of leave to appeal in *Beechnau,* 388 Mich 771 (1972), is authority for the proposition that this Court's opinion in *Beechnau* was correct. Three justices gave no reason as to why leave was denied. Chief Justice T. M. Kavanagh and Justice Williams both dissented being of the opinion that the issue therein was reviewable. Justice Brennan concurred on the basis that the Court of Appeals' opinion was correct and should not be disturbed stating:

"The Courts, in due course, will consider the legal and constitutional issues, if and when the proposal becomes law, and if and when it is challenged by proper parties in a proper proceeding."

This in effect was the basis of this Court's decision in *Beechnau.* Justice BLACK also concurred, but only because in his opinion the quoted title of the initiated measure was comprehensive and fully compliant with the requirement of Const 1963, art 4, § 24; that requirement being that the "one object" of each legislative measure "shall be expressed in its title". Hence at least three justices of the Supreme Court considered the issue of constitutional sufficiency of title under the 1963 constitution to be reviewable. Since the other three justices expressed no reason as to why leave was denied it is just as consistent reasoning to conclude that at least one of the three justices denied leave for the reasons expressed by Justice BLACK as it is that all denied leave for the reasons expressed by Justice BRENNAN or for some other reason.

In my opinion the views expressed by Chief Justice T. M. KAVANAGH and Justices WILLIAMS and BLACK are of the most validity.

In *Leininger v Secretary of State, supra,* the Supreme Court at page 648 stated:

"The Michigan Constitution of 1908, article 5, § 21, provides in part as follows:

" 'No law shall embrace more than one object, which shall be expressed in its title.'

"This makes the title an essential part of every law. That this title requirement applies to laws enacted by the initiative, as well as to those enacted by the legislature, there can be no doubt, particularly in view of the provision of section 1, that no law shall be enacted by the initiative that could not, under the Constitution, be enacted by the legislature.

\* \* \*

"It follows that the petition did not meet the constitutional requirements prerequisite to its transmittal to

the legislature. Nor could the legislature, had it been so disposed, have cured the defect in view of the inhibition of section 1 against legislative change or amendment."

While it is true that the constitutionality of a proposed law is not determined by this Court before enactment, nonetheless, we do determine, in cases properly presented here before submission of the proposed law to the people, whether the constitutional requirements for such submission have been met, and mandamus will issue to prevent such submission when compliance therewith is lacking. *Leininger v Secretary of State, supra.*

The question thus becomes whether constitutional requirements for submission of initiative petitions are required under the 1963 constitution. In my opinion such requirements do exist.

While the Michigan Constitution of 1963 does not contain specific provisions relative to the initiative as did the 1908 constitution, nevertheless, implicit within the language of article 4, § 24, and article 2, § 9, of the 1963 Michigan Constitution there exist constitutional requirements for submission relating to the initiative.

The Michigan Constitution of 1963, article 4, § 24, contains identical language to that contained in the Michigan Constitution of 1908, article 5, § 21, and the Michigan Constitution of 1963, article 2, § 9, while not identical in language is substantively no different than the above referred to language contained in the Michigan Constitution of 1908, article 5, § 1, to the effect that no law shall be enacted by the initiative which could not under the constitution be enacted by the Legislature and that the Legislature must enact or reject

the initiative petition without change or amendment.[1]

The language previously quoted from page 648 of *Leininger* leads me to believe that the result reached by the Court in *Leininger* would have been no different even in the absence of the specific provision contained in the 1908 constitution to the effect that any initiative petitions contain a copy of the title of the proposed measure. On this premise and because of the similarity of the language contained in the 1908 and 1963 constitutions referred to above, I conclude that while the Michigan Constitution of 1963 does not contain a specific provision relative to the initiative, nevertheless, implicit within the language of article 4, § 24, and article 2, § 9, of the 1963 Michigan Constitution, constitutional requirements do exist for submission of initiative petitions. Nor do I agree with the majority that *Kuhn v Department of Treasury*, 384 Mich 378; 183 NW2d 796 (1971), specifically disapproves of *Leininger.* In fact language utilized by Justice Williams in *State Highway Commission v Vanderkloot*, 392 Mich 159, 185; 220 NW2d 416 (1974), indicates *Leininger* to still be good law.

Since article 4, § 24, provides in part that "no law shall embrace more than one object, which shall be expressed in its title", not only must there

---

[1] The Michigan Constitution of 1963, article 2, § 9, provides in pertinent part as follows:

"The power of initiative extends only to laws which the legislature may enact under this constitution."

The Michigan Constitution of 1908, article 5, § 1, provided in pertinent part as follows:

" * * * no law shall be enacted by the initiative that could not under this constitution be enacted by the legislature."

\* \* \*

"The law proposed by such petition shall be either enacted or rejected by the legislature without change or amendment within 40 days from the time such petition is received by the legislature."

be a title but expressed therein must be the object of the proposed legislation. Plaintiffs' contention that the purported title is defective in that the object of the proposed legislation is not expressed therein is therefore reviewable by this Court.

## II.

The alleged title of the proposal contained at the top of the petitions in question reads as follows:

"A petition to initiate legislation *to provide for the use of returnable containers* for soft drinks, soda water, carbonated natural or mineral water or other non-alcoholic carbonated drink; beer, ale or other malt drink of whatever alcoholic content." (Emphasis supplied.)

I disagree with the majority opinion when it states: "The petition before us is in fact headed by a clear statement of the object of the proposed measure." While the statement may well be clear it by no stretch of the imagination can be considered as a clear statement of the object of the proposed measure for it is readily apparent from reading the body of the proposed legislation that the fundamental purpose thereof is to prohibit the sale or distribution of the beverages enumerated in the alleged title and to provide criminal penalties for violation of the proposed act.

In stating the constitutional test for the constitutional language that "no law shall embrace more than one object, which shall be expressed in its title", the Supreme Court in *Vernor v Secretary of State,* 179 Mich 157, 160; 146 NW 338 (1914), stated:

"We think it is that a title must embrace the object of the act, and the body of the act must not be incon-

sistent with the title. The pertinent questions should be: Does the title of the act fairly indicate the purpose of the legislation? Is the title a fair index of the act? Does the title of the act fairly inform the legislators and the public of its purposes, as a whole?"

With respect to the petitions in the instant case it is my opinion that the object of the act is not expressed in the title, the body of the act is inconsistent with the title, the title of the act does not fairly indicate the purpose of the legislation, is not a fair index of the act and does not fairly inform the legislators and the public of its purposes, as a whole. The language of *Vernor v Secretary of State, supra,* was utilized by Justice BLACK in his concurring opinion denying leave to appeal in *Beechnau v Secretary of State, supra.* Hence, Justice BLACK, at the very least, felt that the constitutional test expressed in *Vernor* applied to initiative petitions under the 1963 Michigan Constitution. I agree.

Further in interpreting article 4, § 24, of the Constitution of 1963 the Supreme Court in the case of *Maki v East Tawas,* 385 Mich 151, 157–158; 188 NW2d 593 (1971), stated that this section of the constitution was drafted (1) to prevent the Legislature from passing laws not fully understood; (2) to fairly notify the Legislature of a proposed statute's design; (3) to aid the Legislature and the public in understanding that only subjects germane to the title would be included in the legislation; and (4) to curtail 'logrolling' by preventing the bringing into a bill diverse subjects not expressed in its title. By the same token it can be said that article 4, § 24, of the Constitution of 1963 was drafted to prevent the citizenry from signing petitions not fully understood; to fairly notify the signatories of petitions of the proposed

statute's design; and to aid the signatories in understanding that only subjects germane to the title would be included in the proposed legislation. The alleged title contained on the petitions in question falls short of these objects.

The concept of reasonableness is the hallmark of the cases which have interpreted and applied article 4, § 24 of the Michigan Constitution of 1963 and its forerunners and the test to be applied is whether the title fairly indicates to a reasonable and inquiring mind the general scope, intent, and purpose of the law. *Green v Court Administrator,* 44 Mich App 259, 263, 264; 205 NW2d 306 (1972).

In my opinion the above quoted title would not indicate to a reasonable and inquiring mind the general scope, intent, and purpose of the proposed law for the obvious purpose thereof is as previously stated: to prohibit the sale or distribution of the beverages enumerated in the alleged title in nonreturnable containers and to provide criminal penalties for violation of the proposed act.

I agree with the statement of the majority that "legislation requiring the use of returnable containers necessarily precludes the use of nonreturnables when both are presently permitted". However, the title of the proposed legislation clearly does not *require* the use of returnable containers. It only *provides for the use* of returnable containers. There is a vast difference. Had the proposed title read, "a petition to initiate legislation to *require* the use of returnable containers", or had it read, "a petition to initiate legislation to provide for the use of returnable containers *only*", or had it even read, "a petition to initiate legislation to provide *exclusively* for the use of returnable containers", or had it contained words of similar import, then I would be of the opinion that the

purported title would fairly indicate to a reasonable and inquiring mind the general scope, intent, and purpose of the proposed law.

In dissenting I wish to make it unequivocally clear that I express no opinion as to the feasibility, desirability or constitutionality of the body of the proposed law. I fully recognize and respect the efforts of the countless citizens of this state who have expended countless hours of time in circulating petitions to bring to the attention of the Legislature and perhaps ultimately the electorate an issue which they feel is of sufficient magnitude to warrant immediate action. They are to be commended. As a judge, however, I cannot be swayed out of emotion or simply because the proposed law as expressed in the body of the petition may be necessary, desirable, or needed.[2] I write as I do because in my opinion the title contained in the initiative petitions in question is ambiguous, misleading and incapable of being understood by a reasonable and inquiring mind as expressing the general scope, intent, and purpose of the proposed law.

Mandamus should issue as prayed.

---

[2] Nor do I mean to imply that the majority has been so swayed. There simply exists an honest disagreement as to the state of the law and our respective interpretation of the language contained in the title of the initiative petitions.