FREY v DIRECTOR, DEPARTMENT OF SOCIAL SERVICES

Docket No. 101639. Submitted July 22, 1987, at Detroit. Decided
     August 12, 1987. Leave to appeal granted, 429 Mich 851.

     The Committee to End Tax-Funded Abortions filed with the
     Secretary of State petitions to initiate legislation to amend the
     Social Welfare Act. The initiative petitions stated the substance
     of the amendment and also stated that the "act shall take
     immediate effect." The Board of State Canvassers certified that
     there were more valid signatures than were required for an
     initiative as set forth in Const 1963, art 2, § 9. The state senate
     and state house each voted to enact the proposed amendment
     within the time limit imposed by Const 1963, art 2, § 9. Neither
     body took a separate vote on whether the act should take
     immediate effect in the belief that such action was unnecessary
     because the initiative petition contained the immediate effect
     language. The amendatory statute became 1987 PA 59. Judith
     Frey and others, including the Committee for the Protection of
     Michigan Lives, brought an action against the Director of the
     Michigan Department of Social Services and the State Trea-
     surer in Ingham Circuit Court for declaratory and injunctive
     relief, arguing that 1987 PA 59 could not be given immediate
     effect because it had not been voted to be given immediate
     effect by two-thirds of the members of each house as required
     by Const 1963, art 4, § 27. Barbara Listing and others, includ-
     ing the Committee to End Tax-Funded Abortions, intervened as
     defendants. James R. Giddings, J., on behalf of James T.
     Kallman, J., entered a temporary restraining order, restraining
     the application of the initiated law. Judge Kallman later dis-
     qualified himself. Defendants moved for summary disposition.
     Robert Holmes Bell, J., granted defendants' motion and dis-
     solved the temporary restraining order. Plaintiffs appealed.
          The Court of Appeals held:

REFERENCES

Am Jur 2d, Constitutional Law §§ 318 et seq.
Am Jur 2d, Initiative and Referendum §§ 9 et seq.; 59 et seq.
Power of legislative body to amend, repeal, or abrogate initiative or
     referendum measure, or to enact measure defeated on referen-
     dum. 33 ALR2d 1118.

Even though the act passed by the Legislature adopted the language proposed by the initiative petition and was enacted in accordance with the initiative provisions of Const 1963, art 2, § 9, the act could take immediate effect only upon a vote to that effect of two-thirds of the members of each house as required by Const 1963, art 4, § 27. Since the provisions of article 4, § 27 were not satisfied, the act did not take immediate effect despite the language in the petition that the amendatory language should take immediate effect. Accordingly summary disposition in favor of defendants was improper and summary disposition in favor of plaintiffs should have been granted.

Reversed.

CYNAR, J., dissented. He would hold that a statute enacted pursuant to Const 1963, art 2, § 9 is not subject to the immediate effect restriction contained in Const 1963, art 4, § 27. He would hold that since the initiative petition provided for immediate effect, the act passed by the Legislature pursuant to that initiative petition should take immediate effect. He would affirm.

CONSTITUTIONAL LAW — INITIATIVES — LEGISLATURE — IMMEDIATE EFFECT.

A law which is proposed by initiative and is enacted by the Legislature without change or amendment within forty days in accordance with Const 1963, art 2, § 9 takes effect ninety days after the end of the legislative session at which it was passed if the Legislature does not give immediate effect to the act by a vote of two-thirds of the members in each house in accordance with Const 1963, art 4, § 27, even if the language of the initiative proposal as adopted contains language that the law shall take immediate effect.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich, Michael J. Hodge, Timothy Sawyer Knowlton, Noah Eleizer Yanich* and *Kevin J. Moody*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Richard D. McLellan, William J. Perrone*, and *Cindy M. Wilder*), for intervening defendants-appellees.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Gary P. Gordon* and

*Richard P. Gartner,* Assistant Attorneys General, for defendants.

Before: HOOD, P.J., and CYNAR and SHEPHERD, JJ.

HOOD, P.J. Plaintiffs appeal as of right from the June 30, 1987, order of Ingham Circuit Court Judge Robert Holmes Bell granting the motion for summary disposition of defendants and dissolving a temporary restraining order which had restrained the application of initiated law 1987 PA 59.

On April 30, 1987, the Committee to End Tax-Funded Abortions, a Michigan ballot question committee, filed petitions with the Secretary of State to initiate legislation to amend the Social Welfare Act, MCL 400.1 *et seq.*; MSA 16.401 *et seq.* The aim of the proposal was to prevent state-funded abortions for welfare recipients except where the abortion is necessary to save the mother's life. The proposed amendment states:

> THE PEOPLE OF THE STATE OF MICHIGAN ENACT: Section 109a. NOTWITHSTANDING ANY OTHER PROVISION OF THIS ACT, AN ABORTION SHALL NOT BE A SERVICE PROVIDED WITH PUBLIC FUNDS TO A RECIPIENT OF WELFARE BENEFITS, WHETHER THROUGH A PROGRAM OF MEDICAL ASSISTANCE, GENERAL ASSISTANCE, OR CATEGORICAL ASSISTANCE OR THROUGH ANY OTHER TYPE OF PUBLIC AID OR ASSISTANCE PROGRAM, UNLESS THE ABORTION IS NECESSARY TO SAVE THE LIFE OF THE MOTHER. IT IS THE POLICY OF THIS STATE TO PROHIBIT THE APPROPRIATION OF PUBLIC FUNDS FOR THE PURPOSE OF PROVIDING AN ABORTION TO A PERSON WHO RECEIVES WELFARE BENEFITS UNLESS THE ABORTION IS NECESSARY TO SAVE THE LIFE OF THE MOTHER.

At the bottom of the petition was the language: "THIS ACT SHALL TAKE IMMEDIATE EFFECT." The

initiative was filed in accordance with Const 1963, art 2, § 9, the section permitting initiatives.[1]

On June 12, 1987, the Board of State Canvassers certified 395,751 valid signatures on the petitions, more than the 191,000 required for an initiative by article 2, § 9.[2] On June 17, the Senate voted to enact the amendment by a vote of thirty to six. Senator Lana Pollack requested a vote on immediate effect, but the Senate denied the request on the basis of a memorandum by the Senate Committee on Government Operations which concluded that the amendment was immediately effective because so stated in the petition and because under article 2, § 9 the Legislature was not permitted to change or amend the initiative proposal. Consequently, the Senate took no vote on immediate effect.

On June 23, the House of Representatives approved the petition by a vote of sixty-six to forty-one. Representative Charles Harrison, Jr., requested a vote on immediate effect, but the House denied the request for the same reasons the Senate did. The statute was delivered to the Secretary of State and assigned the designation 1987 PA 59.

On June 23, plaintiffs commenced this action in

[1] All parties agreed in the hearing before Judge Bell, as well as at oral argument before this Court, on a point which we would like to emphasize: Although the issue underlying the initiative involved in this case is public funding of abortions for recipients of welfare benefits, that is *not* the issue before this Court. The only issue before this Court, and the only issue being decided, is whether 1987 PA 59 may take immediate effect. As Judge Bell succinctly and correctly stated: "Whether or not the underlying subject matter is taxes, abortions, sentencing of criminals, you name whatever that social issue is, is not relevant to this matter."

[2] Although the number of valid signatures was twice the number required for an initiative, it is inaccurate to label this fact as an expression of a mandate by the "people" of the State of Michigan. The initiative, as we have indicated, is a procedure in which a minority of the state's voters may *propose* legislation, which may then be *enacted* by the Legislature, or, upon the Legislature's failure to act, by the *majority* of voters at an election.

Ingham Circuit Court for declaratory and injunctive relief, arguing that 1987 PA 59 could not have immediate effect. Plaintiffs alleged that under Const 1963, art 4, § 27, the amendment could only have immediate effect if the Legislature voted, by a vote of two-thirds of the members of each house, to give the act immediate effect. Plaintiffs also requested an order of mandamus, requiring defendants to continue Medicaid funding for abortions until such time as the act became effective. The case was assigned to Judge James T. Kallman, and, in his absence, Judge James R. Giddings entered a temporary restraining order, restraining the application of the initiated law. Judge Kallman later disqualified himself.

At a hearing on June 30, 1987, Judge Robert Holmes Bell, to whom the case had been reassigned, granted summary disposition in favor of defendants and dissolved the temporary restraining order. Judge Bell ruled that the initiative process under article 2, § 9 was separate from the legislative process of article 4, and, therefore, the initiative was not subject to article 4, § 27. Judge Bell ruled that article 2, § 9 was self-sufficient and did not require a two-thirds vote for immediate effect. He concluded that the immediate effect language contained in the proposal was a part of the initiative and was controlling.

Plaintiffs filed this appeal as of right from that decision on July 9, 1987. This Court granted plaintiffs' motion for a stay and motion for immediate consideration, and we now reverse.

The procedure for initiatives and referendums is set forth in Const 1963, art 2, § 9, which states in pertinent part:

The people reserve to themselves the power to propose laws and to enact and reject laws, called

the initiative, and the power to approve or reject
laws enacted by the legislature, called the referen-
dum. The power of initiative extends only to laws
which the legislature may enact under this consti-
tution. The power of referendum does not extend
to acts making appropriations for state institutions
or to meet deficiencies in state funds and must be
invoked in the manner prescribed by law within
90 days following the final adjournment of the
legislative session at which the law was enacted.
To invoke the initiative or referendum, petitions
signed by a number of registered electors, not less
than eight percent for initiative and five percent
for referendum of the total vote cast for all candi-
dates for governor at the last preceding general
election at which a governor was elected shall be
required.

\* \* \*

Any law proposed by initiative petition shall be
either enacted or rejected by the legislature with-
out change or amendment within 40 session days
from the time such petition is received by the
legislature. If any law proposed by such petition
shall be enacted by the legislature it shall be
subject to referendum, as hereinafter provided.

If the law so proposed is not enacted by the
legislature within the 40 days, the state officer
authorized by law shall submit such proposed law
to the people for approval or rejection at the next
general election. . . .

Any law submitted to the people by either initia-
tive or referendum petition and approved by a
majority of the votes cast thereon at any election
shall take effect 10 days after the date of the
official declaration of the vote. No law initiated or
adopted by the people shall be subject to the veto
power of the governor, and no law adopted by the
people at the polls under the initiative provisions
of this section shall be amended or repealed, ex-
cept by a vote of the electors unless otherwise
provided in the initiative measure or by three-
fourths of the members elected to and serving in
each house of the legislature.

The question in this case is whether Const 1963, art 4, § 27 applies to laws enacted by the Legislature pursuant to initiative. Article 4, § 27 states:

> No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.

If article 4, § 27 applies to laws enacted by the Legislature pursuant to initiative, the amendment in the instant case may not go into immediate effect, the question of immediate effect not having been voted on and passed by a vote of two-thirds of each house. If article 4, § 27 does not apply to laws enacted pursuant to initiative, the amendment must be given immediate effect, as stated in the petition.

This is a case of first impression, and we find little guidance in published precedent. After thorough review, we believe that article 4, § 27 does apply to laws enacted pursuant to initiative and that, without the required vote of two-thirds of each house, 1987 PA 59 may not go into effect until ninety days after the end of the session at which it was enacted. We come to this conclusion through what we perceive to be the intent of the 1963 constitutional convention delegates, the language of article 2, § 9, precedent from other states, and common-sense reasoning.

Article 4 of the 1963 constitution is entitled "Legislative Branch." It contains sections which deal generally with the legislative branch. Included are sections on the number of senators and representatives and apportionment of districts (§§ 2, 3), requirements of legislators (§§ 7, 8), restrictions on legislators (§§ 9, 10), legislative privi-

lege (§ 11), formation of compensation commission
(§ 12), time of convening (§ 13), quorum (§ 14), es-
tablishment of committees (§ 17), journal require-
ment (§§ 18, 19), bills (§ 22), title-object clause
(§ 24), printing and reading requirement (§ 26),
local or special acts (§ 29), imposing taxes (§ 32),
governor's veto power (§ 33), publication of laws
(§ 35), and vacancies in offices (§ 38).

We first look at the 1908 constitution's initia-
tive-referendum provision and the changes made
in the provision between the 1908 and 1963 consti-
tutions. The initiative-referendum provision in the
1908 constitution was set forth in article 5, § 1. It
is important to note that article 5 of the 1908
constitution was entitled "Legislative Department"
and contained the same provisions that are in-
cluded in article 4 of the 1963 constitution. For
example, Const 1908, art 5, § 2, setting forth the
number of senators and apportionment of districts,
is now Const 1963, art 4, § 2; Const 1908, art 5, § 3,
setting forth the number of representatives, is now
Const 1963, art 4, § 3; Const 1908, art 5, § 6,
prohibiting a person holding office from having a
seat in the Legislature, is now Const 1963, art 4,
§ 8; Const 1908, art 5, § 21, the title-object clause,
is now Const 1963, art 4, § 24.

The fourth paragraph of Const 1908, art 5, § 1,
read:

> The second power reserved to the people is the
> referendum. No act passed by the legislature shall
> go into effect until 90 days after the final adjourn-
> ment of the session of the legislature which passed
> such act, except such acts making appropriations
> and such acts immediately necessary for the pres-
> ervation of the public peace, health or safety, as
> have been given immediate effect by action of the
> legislature.

This language was repeated in Const 1908, art 5, § 21, the title-object clause.

The initiative-referendum provision found in Const 1908, art 5, § 1, was moved to article 2 of the 1963 constitution, entitled "Elections." The language that an act passed by the Legislature shall not go into effect until ninety days after the final adjournment of the session of the Legislature which passed such act was eliminated from the initiative-referendum provision. However, a review of the discussions among the delegates to the 1963 constitutional convention indicates that the delegates did not intend that the ninety-day period of delay should not be applicable to the initiative process. Rather, they recognized that the ninety-day wait was provided for in Const 1908, art 5, § 21, now Const 1963, art 4, § 27.

Mr. Hoxie, chairman of the committee on legislative powers, stated:

> Removed from constitutional status are the provisions on content and time of filing petitions, canvassing of names on petitions, type sizes, and right of the legislature to prescribe penalties. *Also removed is the date of effectiveness of legislative acts which is covered in article v, section 21.* [2 Official Record, Constitutional Convention 1961, p 2392. Emphasis added.]

Also significant is the following colloquy between delegates Nord and Kuhn:

> *Mr. Nord:* Now, I would like to raise this one further question, if I may, with Mr. Kuhn. Is it your understanding then that in the so called initiative the people could not enact a law which in terms, or else impliedly, repeals? In other words, in enacting a law, doesn't that include the possibility of enacting a new law, or amending or repealing an old law?

*Mr. Kuhn:* If I understand the question correctly, they can enact a law which would repeal another law?

*Mr. Nord:* Yes. The legislature can do that. They can enact a law which repeals in terms, or else impliedly, another law.

*Mr. Kuhn:* Well, the people can do that, yes.

*Mr. Nord:* If that's the case, doesn't it seem as though there is an inconsistency, in that in order to repeal a law under the initiative provision it requires 8 per cent, but in order to repeal it under the referendum provision it requires 5 per cent, and yet there's no difference between the initiative and referendum; they both require petitions?

*Mr. Kuhn:* There is a difference, sir.

*Mr. Nord:* What is the difference?

*Mr. Kuhn:* The difference is the time limit. *After a statute is passed by the legislature, there are 90 days before it goes into effect.* And the reason for this 90 days is to give the people time to go out and get those [referendum] petitions.

*Mr. Nord:* Mr. Chairman, Mr. Kuhn, I understand that when there is a 90 day provision, that is the case. But am I mistaken in assuming that that has been stricken from the provision?

*Mr. Kuhn: Oh, no; that 90 days is still there.*

*Mr. Nord:* That is still in this proposal?

*Mr. Kuhn: It is not in this particular article, but it is in our article v, section 21, I believe.*

*Mr. Nord:* Oh, I've got you, then. All right. Thank you. [2 Official Record, Constitutional Convention 1961, p 2395. Emphasis added.]

This colloquy indicates clearly that the delegates intended the language currently found in Const 1963, art 4, § 27 to apply to initiatives.

The language of article 2, § 9 itself also indicates that article 4, § 27 applies to laws proposed by initiative and enacted by the Legislature. The section states: "The people reserve to themselves the power to *propose* laws and to *enact and reject*

laws, called the initiative . . . ." (Emphasis added.)
When a law submitted by initiative is adopted by
the Legislature, the people are merely proposing
the law, and the Legislature is enacting the law. If
the law is rejected by the Legislature and submit-
ted to the people at the next general election and
approved, the people have enacted the law. In the
first instance, the Legislature doing the enacting,
it is subject to article 4, § 27.

In addition, § 9 provides: "The power of initia-
tive extends only to laws which the legislature
may enact under this constitution." Under the
constitution, the Legislature may enact immediate-
effect laws only by vote of two-thirds of each
house. The power of initiative thus must be subject
to the same limitation.

Another aspect of the language of § 9 compels
the same conclusion. Section 9 states that "[a]ny
*law* proposed by initiative petition shall be either
enacted or rejected by the legislature *without
change or amendment* within 40 days . . . ." In
our opinion, the "law" is the substantive amend-
ment to MCL 400.1 *et seq.*; MSA 16.401 *et seq.*
proposed by the initiative, that is: the language
stating that an abortion shall not be a service
provided with public funds to a recipient of wel-
fare benefits. The "law" is that designated as
§ 109a. The sentence, "This act shall take immedi-
ate effect," is not part of the substantive law.
Rather, it is a procedural provision. This view is
supported by *Thompson v Bd of Supervisors of
Alameda Co,* 180 Cal App 3d 555; 225 Cal Rptr 640
(1986). In *Thompson,* opponents of certain redis-
tricting circulated initiative petitions calling for
adoption of an ordinance which would repeal an
earlier redistricting ordinance. The initiative re-
ceived the required number of signatures and was
submitted to the Board of Supervisors. *Thompson,*

*supra,* p 559. Under the California elections code, the board was required to either adopt the proposal without change or submit it to the voters at the next election. The board purported to enact the initiative. However, where the initiative stated it was to be effective "immediately upon its passage by the voters," the ordinance as passed by the board provided that it was to be effective thirty days after its adoption. This was done because the elections code provided that acts passed by the legislature were to go into effect thirty days after adoption. *Id.* On appeal, the appellants alleged that, when the board changed the effective date, it failed to adopt the purposed ordinance "without change" and was thus obligated to submit the ordinance to the voters. *Id.,* 560. The court disagreed and held that the effective date language was not a part of the substantive law proposed by the initiative. The court noted that California has an "indirect initiative system" wherein, before an initiative can go before the people for a vote, it must be presented to and rejected by the legislature. Since the initiative had been presented to and enacted by the legislature, it was subject to the thirty-day provision of the code. *Id.,* 561. The court noted that, when the board enacted the initiative ordinance, it made no change in the substantive law. *Id.,* 561. Defendants' and intervening defendants' attempts in the instant case to distinguish *Thompson* because it involved a conflict between the language on an initiative petition and a California statute, rather than a conflict between two constitutional provisions, are not persuasive. *Thompson* stands for the proposition that immediate effect language in an initiative is not part of the proposed law and to adopt the proposed law without the immediate effect language does not violate the requirement that the Legislature

adopt the proposed law "without change or amendment." This is particularly compelling since article 2, § 9 also involves an indirect initiative system, which first gives the Legislature a chance to react to the people's will and an opportunity to spare the expense of a public vote.[3]

Defendants' and intervening defendants' position that article 4 is in no way applicable to article 2 is further weakened by the fact that article 2, § 9 states: "No law initiated or adopted by the people shall be subject to the veto power of the governor." The veto power is conferred by article 4, § 33. If the delegates had not meant to have sections of article 4 apply to article 2, the language exempting initiatives from the governor's veto power would not have been necessary.

Further support for the proposition that article 4 applies to article 2 is found in *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947). In *Leininger,* the Court held that a law proposed by an initiative petition was defective because it did not contain a title in accordance with Const 1908, art 5, § 21, the title-object clause (now Const 1963, art 4, § 24). *Leininger, supra,* p 648. In holding that the title requirement of Const 1963, art 5, § 21 applied to initiatives, the Court stated:

> The Michigan Constitution of 1908, art 5, § 21, provides in part as follows:
> "No law shall embrace more than one object, which shall be expressed in its title."

---

[3] The circuit court noted that, if the petition had stated that it was to go into effect in 1990, the Legislature would have had to adopt it as is and the 1990 effective date would have stood. Even if we were to find that a 1990 effective date provision were a part of the substantive law of the initiative there would be no issue as to whether that portion of the initiative would be binding. There is no constitutional limitation on having a law go into effect at some future date. There is a limitation only on immediate effect.

This makes the title an essential part of every law. That this title requirement applies to laws enacted by the initiative, as well as to those enacted by the legislature, there can be no doubt, particularly in view of the provision of section 1, that no law shall be enacted by the initiative that could not, under the Constitution, be enacted by the legislature. [*Leininger, supra,* p 648.]

Unless article 4, § 27 is incorporated into the initiative process, there is no guide as to when an initiative without immediate effect language, enacted by the Legislature, becomes effective. The Attorney General addressed this question in OAG 1963-1964, No 4313, p 365 (April 9, 1964). In that opinion, the Attorney General discussed the effective date of a law proposed by initiative petition and enacted by the Legislature making tenure of teachers mandatory in Michigan. The initiative petition did not specify that, should the Legislature enact the initiative petition into law, the law would become immediately effective. The Attorney General's opinion concluded:

Consideration must also be given to Article IV, Sec. 27 of the Michigan Constitution of 1963, which provides as follows:

"No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house."

Reading the provisions of Article II, Sec. 9 and Article IV, Sec. 27 together, in light of the form of initiative petition presented to the legislature calling for mandatory tenure without specifying immediate effect in such petition should the legislature enact it, the conclusion must follow that the initiative petition which has been enacted by the Michigan legislature, entitled Act 2, P.A. 1964, shall not take effect until the expiration of 90 days

after the end of the session at which it was passed.
[*Id.*, 367-368.]

Intervening defendants claim that with this language the Attorney General expressly recognized that, if a law proposed by an initiative states it is to go into immediate effect, it shall be given immediate effect. However, that issue was not before the Attorney General, as the petition in that case was silent on the effective date, and any recognition that immediate effect language was to be given effect was merely implied.

Rather, we read the above language as indicating a conclusion by the Attorney General that article 4, § 27 applies to initiatives. Either article 4, § 27 applies to all initiatives or it applies to none. It cannot apply only to initiatives which do not specify an effective date, since that would not provide stability to initiatives and assure that laws proposed by initiatives are on an equal footing with acts of the Legislature not proposed by the people.

Acceptance of defendants' position would place laws proposed by the initiative on a superior, not equal, footing with legislative acts not proposed by the people. Since everything that emerges from the Legislature is legislation, all legislative acts must be on an equal footing. Stated in other language, once it is conceded that it is necessary to refer to article 4 in order to determine the effective date of initiated legislation that does not refer to an effective date, it becomes immediately apparent that the wall that is said to exist between article 2 and article 4 does not exist.[4]

---

[4] Other constitutionally mandated procedures of article 4 also necessarily apply to legislation initiated under article 2, e.g., § 14 (quorum requirement), § 20 (open meetings), § 35 (publication and distribution of laws).

Finally, were initiatives not subject to article 4, § 27, an anomalous result would obtain where a law proposed by initiative is rejected by the Legislature and submitted to the vote of the people. Under § 9, such a law approved by the people takes effect ten days after the date of the official declaration of the vote. Thus, even if the petition contained immediate effect language, it would not take immediate effect. If there is such a waiting period for a law which has been voted on by a majority of the electorate, there is even more reason to have a waiting period for a law which has garnered the vote of only eight percent of registered electors. In this vein, we note that, even if we were to find that the immediate-effect language of the initiative petition in the instant case were a part of the substantive law, had the Legislature not adopted it without change, it would have been submitted to the people for a vote whereupon, had it passed, it would not have gone into effect until ten days after the election.

Defendants rely on *Decher v Secretary of State,* 209 Mich 565, 576-577; 177 NW 388 (1920). In *Decher,* the Court held that a resolution by the Michigan Legislature ratifying an amendment to the United States Constitution was not an "act" subject to referendum under Const 1908, art 5, § 1, now Const 1963, art 2, § 9. *Decher, supra,* p 577. To the extent that *Decher* stated that the word "act" in article 5, § 1 "had in mind a statute or law passed with the formality required by the Constitution and approved by the governor," this is dicta and does not control the instant case.

Plaintiffs' argument that giving the act immediate effect would impair their right to referendum is without merit. Under article 2, § 9, referendum must be invoked within ninety days of the final adjournment of the legislative session at which the

law was enacted. Whether the law was given immediate effect is irrelevant. In addition, intervening defendants' argument that the fact that the constitution uses the term "passed" in article 4, § 27 and the term "enact" in article 2, § 9 indicates that article 4, § 27 is to apply only to bills initiated by the Legislature is also meritless. We feel that the words chosen by the framers are merely a matter of semantics and do not have a bearing on the issue before us.

Our holding that article 4, § 27 applies to initiatives does not impair the practice that the initiative process should "be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises," *Scott v Secretary of State,* 202 Mich 629, 643; 168 NW 709 (1918). We uphold the right of the people to initiate legislation through initiative. We hold only that when such a proposed law is enacted by the Legislature, it is subject to article 4, § 27.

We have no question that the people who signed the initiative petition in the instant case intended the act to have immediate effect. However, that fact is not dispositive. Since the Constitution does not permit this to happen without a two-thirds vote of the Legislature, neither the people who signed the petition nor this Court can give effect to that intention. A constitution which is adopted by a majority of the people places limitations upon the people. For example, the people are prohibited from initiating legislation which cannot be adopted by the Legislature. Any limitations placed upon either the government or the people in a constitution can only be changed by a constitutional amendment.

In sum, we hold that when a law is proposed by initiative and is enacted by the Legislature without change or amendment within forty days as

required by article 2, § 9, it goes into effect ninety days after the end of the session at which it was passed if the Legislature does not give immediate effect to the act by a vote of two-thirds of the members in each house.

The decision of the trial court is reversed, and summary judgment ordered in favor of plaintiffs in accordance with this opinion.

SHEPHERD, J., concurred.

CYNAR, J. *(dissenting)*. I am compelled to respectfully dissent. I do not agree with the majority's position that article 4, § 27 of the Michigan Constitution applies to the initiative process. Article 2 of the constitution addresses the issues of electors, elections, and the initiative and referendum processes. On the other hand, article 4 establishes and defines the powers and duties of the legislative branch of government.

Looking at the plain and common sense meaning of the words used in article 2, § 9 and article 4, § 27, it is clear that these constitutional provisions are separate and distinct. Article 2, § 9 reserves to the people the power to propose laws and to *enact* and reject laws through initiative, and the power to approve or reject laws enacted by the Legislature through referendum. The power of initiative extends only to laws which the Legislature may enact under this constitution. Once a law is proposed by initiative petition, it *shall either be enacted or rejected by the Legislature without change or amendment* within forty session days from the time the petition is received. Const 1963, art 2, § 9.

Article 2, § 9 is self-executing in that it does not depend upon statutory implementation, even though the last provision of the article states,

"[t]he legislature shall implement the provisions of this section." *Thompson v Secretary of State,* 192 Mich 512, 520; 159 NW 65 (1916); *Ferency v Secretary of State,* 409 Mich 569, 591, n 9; 297 NW2d 544 (1980).

Article 4, § 27 is contained in that part of the constitution dealing with the legislative bill process. The language of article 4, § 22 speaks only to *bills* and not initiative petitions. The term "pass" is only used in article 4 and only when describing the bill process. Article 2, § 9 contains the word "enacted" while article 4, § 27 uses the term "passed." Because different language is employed in these articles, this is an indication that article 4, § 27 governs legislation created through the bill process, not the initiative process.

In addition, OAG 1963-1964, No. 4313, p 365 (April 9, 1964), supports the proposition that the petition takes immediate effect and that article 2 and article 4 are separate and independent of each other. In that case, the Attorney General discussed the effective date of a law proposed by initiative petition and enacted by the Legislature making tenure of teachers mandatory in Michigan. The petition did not specify that it would become immediately effective upon enactment by the Legislature. The Attorney General concluded:

> The aforesaid initiative petition did not specify by its provisions that should the legislature enact the initiative petition into law, the law would become immediately effective.
>
> *       *       *
>
> Reading the provisions of Article II, Sec. 9 and Article IV, Sec. 27 together, in *light of the form of initiative petition presented to the legislature . . . without specifying immediate effect in such petition should the legislature enact it,* the conclusion must follow that the initiative petition which has

been enacted by the Michigan legislature . . .
shall not take effect until the expiration of 90 days
after the end of the session at which it was passed.
[Emphasis added. *Id.*, 365, 367-368.]

The majority reads this language as indicating a
conclusion that article 4, § 27 applies to initiatives.
I read the above language differently. The Attor-
ney General merely concluded that article 4, § 27
should be applied to initiative petitions where they
are silent as to their effective date. The Attorney
General did not conclude that article 4, § 27 ap-
plies to initiatives in *all* situations as the majority
reasons. The Attorney General "borrowed" the
provisions of article 4, § 27 because the teacher
tenure initiative did not provide for effective date
language. In this case, it is unnecessary to refer to
article 4, § 27 since the initiative did specify by its
own terms that it shall have immediate effect.

The majority relies on *Thompson v Bd of Super-
visors of Alameda Co,* 180 Cal App 3d 555; 225 Cal
Rptr 640 (1986), for the proposition that the effec-
tive date language is merely "procedural," thereby
not a part of the main body of the initiative.
*Thompson* is distinguishable for two reasons. First,
the effective date change was required in order for
the ordinance to comply with § 3751 of the Califor-
nia election code. Secondly, it can equally be ar-
gued that effective date language in a proposed
law is substantive, no matter where the language
appears in an initiative.

In this case, the immediate effect language was
a part of the initiative as proposed by the people.
The Legislature chose to pass the initiative as
written. The Legislature could easily have rejected
the entire petition including the immediate effect
language.

Moreover, principles of constitutional construc-

tion call for this result. In *Walker v Wolverine Fabricating & Mfg Co,* 425 Mich 586, 596; 391 NW2d 296 (1986), our Supreme Court reaffirmed the long-standing rule of constitutional construction:

> The paramount rule of constitutional construction is that the constitution should be given that interpretation which the great mass of people would have understood when they ratified it. Justice COOLEY described this rule in terms which have been cited many times since:
>
> "A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. Cooley's Const Lim 81." [*Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971).]
>
> The most obvious way to divine what meaning "the great mass of the people themselves would give" any word of phrase would be the common meaning of the language used.

It is contended that the language of article 2, § 9 itself clearly indicates that article 4, § 27 applies to laws proposed by initiative and enacted by the Legislature. To the contrary, it takes a strained reading to reach such a result. The majority in part draws on a colloquy printed in 2 Official Record, Constitutional Convention 1961, p 2395, wherein the discussion of several delegates supposedly lends support to the position that the act passed by the Legislature following a submission of the proposed initiative referendum was not intended to go in effect until ninety days after adjournment of the Legislature's final session. If this was intended, it is difficult to understand why a few written words in article 2, were not included to clearly express such intent. Further article 2

expressly provides that the right of referendum must be invoked in a prescribed manner within ninety days following adjournment of the legislative session. It does not seem reasonable to prescribe when the right of referendum must be invoked, but avoid expressing in article 2 the effective date of a statute enacted pursuant to an initiative unless such omission was so intended.

Review of the Constitutional Convention record reflects much study and labor before the passage of the 1963 Constitution. The words in article 2 were carefully selected and structured for their intended meaning. Some of the following reasons were submitted in support of Committee Proposal 118:

> Provision is also made to place laws passed by vote of the electors on a higher plane than those passed by the legislature. The people's will should not be changed by veto or repeal unless it is provided in the act. Only the people themselves have the right to change or repeal what they have enacted.
>
> Removed from constitutional status are the provisions on content and time of filing petitions, canvassing of names on petitions, type sizes, and right of the legislature to prescribe penalties. Also removed is the date of effectiveness of legislative acts which is covered in article v, section 21.
>
> All of these matters are left to the legislature in the last sentence. However, the language of the last sentence also makes it clear that the section is self executing and the legislature cannot thwart popular will by refusing to act. [2 Official Record, Constitutional Convention 1961, p 2392.]

Pursuant to article 2, § 9, some 457,272 people of this state signed the initiative petitions. The number of required signatures for initiative under article 2, § 9, was 191,000. The Board of State

Canvassers certified 395,751 valid signatures on the petitions. This was more than double the number of signatures required. The proposed initiative was approved as submitted by a majority of both houses of the Legislature. The enacted law can be stayed and subjected to referendum by five percent of the voters.

Constitutional and statutory initiative and referendum provisions are to be liberally construed to effectuate their purpose, to facilitate rather than hamper the exercise by the people of those reserved rights. *Kuhn v Dep't of Treasury,* 384 Mich 378, 385; 183 NW2d 796 (1971); *Newsome v Board of State Canvassers,* 69 Mich App 725, 729; 245 NW2d 374 (1976), lv den 397 Mich 833 (1976). The constitutional privilege of the people to propose and to have legislation enacted should be respected by the Court unless a clearly restrictive provision of the constitution is shown to be applicable.

The majority's construction of article 2 would restrict the people's right of initiative. It is my conclusion that the law proposed by the people and enacted by the Legislature herein is not subject to article 4, § 27. The trial court's judgment should be affirmed.