INDUSTRIAL BANK OF WYANDOTTE *v.* REICHERT.

1. Constitutional Law—Public Safety—Statutes—Immediate Effect.

"Public safety," within meaning of State Constitution (article 5, § 21) providing that legislature may give immediate effect to acts immediately necessary for preservation of public safety, has to do not only with safety and protection of persons, but also of their property.

2. Evidence—Judicial Notice—Banking System Has to Do With Safety of Property.

It is self-evident that well-ordered banking system has very much to do with safety of property.

3. Constitutional Law — Industrial Banks — Public Safety — Statutes—Immediate Effect.

In absence of showing that enactment of Act No. 66, Pub. Acts 1929, opening up to other State banks the field of industrial loans, did not make precarious the business of strictly industrial banks or render it immediately necessary as matter of public safety that no more industrial banks should be chartered, court cannot say that legislature exceeded its constitutional limitation (article 5, § 21) in giving immediate effect to Act No. 108, Pub. Acts 1929, providing that no more industrial banks should be chartered.

4. MANDAMUS—NOT MATTER OF RIGHT.
   Mandamus is not matter of right but rather one of grace, and therefore court will not grant writ to compel performance of act expressly prohibited by law.

5. SAME—INDUSTRIAL BANKS—CHARTERING PROHIBITED BY STATUTE— WRIT WILL NOT LIE TO COMPEL ISSUING CHARTER.
   Mandamus will not lie to compel banking commissioner to issue certificate of authority to do business to industrial bank organized under Act No. 296, Pub. Acts 1917, although said bank was legally organized, where, subsequent thereto but prior to issuance of certificate by banking commissioner, chartering of industrial banks was prohibited by Act No. 108, Pub. Acts 1929, which was given immediate effect.

Mandamus by Industrial Bank of Wyandotte, a Michigan corporation, and others to compel Rudolph E. Reichert, State banking commissioner, to examine said bank ,and issue his certificate of authority to commence business. Submitted June 17, 1930. (Calendar No. 34,613.) ,Writ denied October 3, 1930.

*Cyril C. Pulford* and *Retan, Zeleznik & Platt,* for plaintiffs.

*Wilber M. Brucker,* Attorney General, and *Paul G. Eger,* Assistant Attorney General, for defendant.

NORTH, J.  In November, 1927, an application was made to the commissioner of the banking department to organize the Industrial Bank of Wyandotte, one of the petitioners herein.  The application was made under provision of Act No. 296, Pub. Acts 1917, and was approved by the commissioner February 10, 1928.  Thirteen months later (March 14, 1929) articles of incorporation were forwarded to the banking commissioner and by him approved

March 26, 1929. These articles were forthwith filed in the office of the secretary of State and also with the county clerk of Wayne county, where the bank is located. Thereafter directors and officers were elected; and on the 16th of May, 1929, the oath of the directors, the signatures of the officers, together with a certificate duly executed certifying that 50 per cent. of the capital stock subscribed had been paid in were filed in the office of the banking commissioner; and an application made for a certificate under the hand and official seal of the banking commissioner authorizing petitioner to commence business as an industrial bank in accordance with section 9 of the act, which provides:

"When the industrial bank * * * notifies the commissioner that at least fifty per cent. of its capital has been duly paid in and that such industrial bank has complied with all the provisions of this act required before the bank shall be authorized to commence business, the commissioner shall examine into the condition of such industrial bank, * * *. If upon such examination it appears that such industrial bank is lawfully entitled to commence business, the commissioner shall, within thirty days after receiving notice that fifty per cent. of its capital has been paid in, give to such industrial bank a certificate under his hand and official seal that such industrial bank is authorized to commence business."

The commissioner refused to issue the certificate, or charter, as it is sometimes called. His reason for refusal was that on April 30, 1929, Act No. 108, Pub. Acts 1929, which was given immediate effect, was signed by the governor and became operative. This act is amendatory of the act under which petitioner seeks to operate, and provides:

"On and after the effective date of this amendatory act, it shall be unlawful for the commissioner of the banking department to grant any further charters under the provisions of act number two hundred ninety-six of the public acts of nineteen hundred seventeen."

Petitioner seeks by mandamus to compel the commissioner of the banking department:

* * *   "To forthwith proceed to examine said Industrial Bank of Wyandotte and ascertain whether or not it has complied with all the statutory requirements, and if so, to forthwith issue his certificate under his hand and official seal authorizing the said Industrial Bank of Wyandotte to commence business."

In its brief petitioner presents these two questions:

"(1) Did the Industrial Bank of Wyandotte have a legal existence before Act No. 108 of the public acts of 1929 was given immediate effect?

"(2) Did the legislature have the right to give Act No. 108 of the public acts of 1929 immediate effect?"

We will consider these issues in inverse order. Section 21, art. 5, State Constitution, provides:

"No act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house."

Is Act No. 108, Pub. Acts 1929, of such a character that it can be held to be "immediately nec-

essary for the preservation of public peace, health or safety," and therefore within the constitutional exception? Public safety has to do not only with the safety and protection of persons, but also of their property. It is self-evident that a well-ordered banking system has very much to do with the safety of property. Prior to 1929 the industrial banks organized under the Michigan statute were authorized to make so-called commercial loans, issue certificates of investment, and make certain charges against borrowers which other State banks were not empowered to do. By Act No. 66, Pub. Acts 1929, the legislature authorized any bank organized under it or under Act No. 205, Pub. Acts 1887 (as amended, 1 Comp. Laws 1915, § 7967 *et seq.*), to establish an industrial loan department by making application to the banking commissioner and obtaining his certificate of authorization. This act not only revised and codified the State banking law, but it opened to other banks the field of industrial loans in which theretofore industrial banks had operated to the exclusion of other State banks. We are not prepared to say, nor does the record show, that this change did not make precarious the business of strictly industrial banks or render it immediately necessary as a matter of public safety that no more industrial banks should be chartered. Hence we should not and do not hold that the legislature exceeded its constitutional limitations in giving Act No. 108 immediate effect. The position of this court relative to the construction and application of the above quoted section of the Constitution is declared in *Attorney General* v. *Lindsay,* 178 Mich. 524; *People* v. *Stambosva,* 210 Mich. 436; and *Newberry* v. *Starr,* 247 Mich. 404.

Plaintiff also contends that, having filed its approved articles of incorporation prior to the passage of Act No. 108, it has a legal right to existence and cannot be deprived thereof by the subsequent enactment of the statute. We will not reiterate the holding of this court wherein a plain distinction has been made between the power or right of a corporation "to be" and the right "to do." See *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261. We have held that these powers are clearly distinct and separate phases of a corporate franchise. Petitioner saw fit to incorporate under a statute which specifically required the commissioner's certificate as a condition precedent to its doing business as an industrial bank. In other words, it could not have the right "to do" until the certificate was obtained. Before application was made for this certificate, the power of the commissioner to issue it had been terminated by the 1929 act of the legislature. Conceding but not holding, as is contended by plaintiff, that issuing the charter involved only a ministerial act on the part of the commissioner, nevertheless since the writ of mandamus is not a matter of right but rather one of grace, the court will not grant the writ and thereby compel the commissioner to perform an act expressly prohibited by law. A recent decision of this court is somewhat in point. *Dobson* v. *Secretary of State,* 249 Mich. 199.

For over half a century a very similar provision has been contained in the national bank act (U. S. Rev. Statutes [2d Ed.], § 5169 [12 USCA, § 27]) requiring the certificate of the comptroller of currency as a condition precedent to the right of a corporation organized under that act to engage in the banking business. In fact this requirement seems to

have been copied in substance by this State in Act No. 205, Pub. Acts 1887. The Supreme Court of the United States has held that until it receives the certificate of authority from the comptroller of currency, a bank organized under the national bank act has neither the right nor authority to transact business except such as is incidental and necessarily preliminary to its organization. *McCormick* v. *Market Bank,* 165 U. S. 538 (17 Sup. Ct. 433). This case clearly holds that the corporation does not have a vested right to exercise its corporate powers until it receives the certificate of authorization. To hold otherwise would be to render nugatory the statutory provision requiring the certificate of authority to do business. Plaintiff's application for a writ of mandamus is denied, with costs to the defendant.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.