FREY v DEPARTMENT OF MANAGEMENT AND BUDGET

Docket Nos. 81502, 81517. Argued October 9, 1987 (Calendar No. 13). Decided November 4, 1987.

The Committee to End Tax-Funded Abortions filed an initiative petition with the Secretary of State, seeking to amend the Social Welfare Act. The proposed amendment provided that it was to take immediate effect. Thereafter, both houses of the Legislature voted to enact the amendment, the Senate by a vote of 30 to 6, and the House by a vote of 66 to 41, but denied requests for votes on the provision for immediate effect. The initiated law was designated 1987 PA 59.

Judith Frey and others then brought an action in the Ingham Circuit Court against the Department of Management and Budget and others, seeking to prevent 1987 PA 59 from taking immediate effect on the ground that, under Const 1963, art 4, § 27, a law may take effect immediately only if two-thirds of the members of each house vote to give the law immediate effect. The court, Robert Holmes Bell, J., granted summary disposition for the defendants, ruling that the initiative petition process was governed by Const 1963, art 2, and that the provision of 1987 PA 59 for immediate effect was controlling because it was part of the original initiative and was not procedural. The Court of Appeals, Hood, P.J., and Shepherd, J. (Cynar, J., dissenting), reversed, holding that art 4, § 27 applies to initiative laws and that without the required two-thirds vote of each house, 1987 PA 59 could not take effect until ninety days after the legislative session in which it was enacted (Docket No. 101639). The defendants appeal.

In an opinion by Justice Archer, joined by Chief Justice Riley and Justices Levin, Brickley, and Boyle, the Supreme Court held:

When a law is proposed by initiative and enacted by the

REFERENCES

Am Jur 2d, Initiative and Referendum §§ 22 et seq.

Right of signer of petition or remonstrance to withdraw therefrom or revoke withdrawal, and time therefor. 27 ALR2d 604.

See also the annotations in the Index to Annotations under Initiative and Referendum.

Legislature without change or amendment within forty days as required by Const 1963, art 2, § 9, it takes effect ninety days after the end of the session in which it was passed unless two-thirds of the members of each house of the Legislature, as provided by art 4, § 27, vote to give the law immediate effect. 1987 PA 59, not having received votes in favor of immediate effect by two-thirds of the elected members of each house, may not take effect until ninety days after the end of the session in which it was enacted.

1. Case law requires constitutional provisions which relate to the same subject matter to be construed with reference to one another. Const 1963, art 2, § 9, provides for enactment by the Legislature of an initiated law. Article 4, § 27 sets out the prerequisites to be met before any law passed by the Legislature may take immediate effect. When the provisions are construed so as to give effect to both, art 4, § 27 applies to initiated laws enacted pursuant to art 2, § 9. Such construction is consistent with the common understanding of the people and with the record of the Constitutional Convention of 1961 and the history of the changes made in the referendum-initiative provisions of the 1908 Constitution.

2. This construction does not interfere with the right of the people to initiate legislation. The provision of art 2, § 9 that the Legislature must either reject or enact an initiated law without change or amendment refers to the substance of the initiated law. The language in 1987 PA 59 providing for the law to take immediate effect only could be given effect by a vote of two-thirds of the members of each house. The fact that persons who signed the initiative petition intended the act to have immediate effect is not dispositive, since the constitution prohibits such a result without a vote of two-thirds of the members of each house of the Legislature. Because it is the constitution which imposes the restriction, neither the court nor the people can give effect to that intention. Any change in the provision can be accomplished only by constitutional amendment. Had the people enacted 1987 PA 59, under art 2, § 9, the act would have taken effect within ten days. But because the people proposed, and the Legislature enacted, 1987 PA 59, art 4, § 27 prevents the act from taking effect until ninety days after the adjournment of the Legislature that passed it.

Affirmed.

Justice CAVANAGH, dissenting, stated that Const 1963, art 4, § 27 does not apply to an initiative petition which contains a provision that it is to take immediate effect. Rather, the initiative petition process is governed by Const 1963, art 2, § 9, which

provides that any law proposed by initiative petition either is to be enacted or rejected by the Legislature without change or amendment. Where an initiative petition is enacted which provides for immediate effect, it is not subject to art 4, § 27, but is subject exclusively to art 2, § 9. Where a petition does not provide for immediate effect, it is either to be enacted or rejected under art 2, § 9, and, if enacted, then is subject to art 4, § 27. Whatever is included within the language of a petition is subject exclusively to art 2, § 9.

Justice GRIFFIN took no part in the decision of this case.

162 Mich App 586; 413 NW2d 54 (1987) affirmed.

CONSTITUTIONAL LAW — INITIATED LAWS — EFFECTIVE DATE.

A law proposed by initiative petition which is enacted by the Legislature without change or amendment within forty days of its reception takes effect ninety days after the end of the session in which it was enacted unless two-thirds of the members of each house of the Legislature vote to give it immediate effect (Const 1963, art 2, § 9, art 4, § 27).

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich, Timothy Sawyer Knowlton, Kevin J. Moody,* and *Noah Eliezer Yanich*) for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Richard P. Gartner,* Assistant Attorneys General, for the defendants.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Richard D. McLellan, William J. Perrone,* and *Cindy M. Wilder*) for the intervening defendants.

Amici Curiae:

*Edward M. Wise* for American Civil Liberties Union Fund of Michigan, Jewish Community Council of Metropolitan Detroit, Michigan National Organization for Women, Planned Parenthood Affiliates of Michigan, and Women Lawyers Association of Michigan.

ARCHER, J. In this case of first impression, we granted leave to determine whether Const 1963, art 4, § 27, applies to initiated laws enacted by the Legislature.[1] If art 4, § 27 applies to initiated laws enacted by the Legislature, then those laws must receive a two-thirds vote of each house to take immediate effect. If art 4, § 27, does not apply, then those laws may be given immediate effect without being passed by a two-thirds vote of each house.

We hold that art 4, § 27, does apply to initiated laws enacted by the Legislature. Therefore, since the initiative was not given immediate effect by a two-thirds vote of each house of the Legislature, 1987 PA 59 may not go into effect until ninety days after the end of the session at which it was enacted. We affirm the decision of the Court of Appeals.

FACTS

On April 30, 1987, the Committee to End Tax-Funded Abortions, a registered ballot question committee, filed an initiative petition with the Secretary of State, seeking to amend the Social Welfare Act, MCL 400.1a *et seq.;* MSA 16.401(1) *et seq.,* by adding § 109a. The proposed amendment stated:

The People of the State of Michigan enact: Section 109a. Notwithstanding any other provision of this act, an abortion shall not be a service provided with public funds to a recipient of welfare benefits, whether through a program of medical assistance, general assistance, or categorical assistance or through any other type of public aid or assistance program, unless the abortion is nec-

_____

[1] The issue in this case does not involve the merits of state-paid abortions.

essary to save the life of the mother. It is the policy of this state to prohibit the appropriation of public funds for the purpose of providing an abortion to a person who receives welfare benefits unless the abortion is necessary to save the life of the mother.

In the center of the page several lines down were the words:

This act shall take immediate effect.

On June 12, 1987, the Board of State Canvassers certified the sufficiency of the petition, declaring that there were sufficient valid signatures for the proposed law to be submitted to the Legislature. On June 17, the Senate voted to enact the amendment by a 30 to 6 vote. Senator Lana Pollack requested a vote on immediate effect, but the Senate denied the request because a memorandum by the Senate Committee on Government Operations had concluded that the amendment was immediately effective. Consequently, the Senate did not take a vote on immediate effect.

On June 23, 1987, the House of Representatives approved the petition by a vote of 66 to 41. Representative Charlie J. Harrison, Jr., requested a vote on immediate effect. His request was denied for the same reasons given in the Senate. On that same day, the initiated law was delivered to the Secretary of State and designated 1987 PA 59.

On June 23, 1987, after the vote of the House of Representatives, plaintiffs-appellees commenced this action in the Circuit Court for the Thirtieth Judicial District, seeking declaratory relief, a writ of mandamus, and injunctive relief to prevent 1987 PA 59 from taking immediate effect. Plaintiffs alleged that under Const 1963, art 4, § 27, the

amendment could only take immediate effect if the Legislature voted, by a two-thirds vote of each house, to give the act immediate effect. Plaintiffs also requested an order of mandamus, requiring defendants to continue Medicaid funding for abortions until the act became effective.[2]

The case was assigned to Judge James T. Kallman, and in his absence, Judge James R. Giddings entered a temporary restraining order, restraining the application of the initiated law. On the hearing date, Judge Kallman recused himself, and the matter was reassigned.

Following the hearing on June 30, 1987, Judge Robert Holmes Bell granted summary disposition for defendants and dissolved the temporary restraining order. Judge Bell ruled that art 2 contained sufficient standards to guide the court in determining what is to occur in an initiative petition process; therefore, there was no need to look at art 4. Judge Bell also ruled that the words at the bottom of the petition, "This act shall take immediate effect," were controlling because they were part of the original initiative and not procedural.

Plaintiffs filed an appeal as of right in the Court of Appeals on July 1, 1987. Contemporaneously, plaintiffs filed, in this Court, an emergency application for leave to appeal prior to decision of the Court of Appeals, a motion for a temporary restraining order or stay, and a motion for immediate consideration. On July 9, 1987, the Court of Appeals issued an order staying the trial court's order and set forth expedited appeal procedures.

On August 12, 1987, the Court of Appeals reversed the decision of the trial court and held that

_____

[2] On June 25, 1987, the Governor filed an Executive Message asking the Court to direct certification of the controlling questions of law under MCR 7.305(A)(1).

art 4, § 27 applies to laws enacted pursuant to an initiative and that, without the required two-thirds vote of each house, 1987 PA 59 may not go into effect until ninety days after the end of the session at which it was enacted. After noting that this was a case of first impression, the Court stated that its conclusion was based on the intent of the 1961 Constitutional Convention delegates, the language of art 2, § 9, precedent from other states, and common-sense reasoning.[3]

On August 19 and 20, 1987, defendants and intervening defendants filed applications for leave to appeal in this Court and motions for immediate consideration of those applications. On September 8, 1987, we granted leave to appeal and granted the motions for immediate consideration. On that date, we also denied plaintiffs' July 1, 1987, application for leave to appeal prior to decision by the Court of Appeals and the motion for a temporary restraining order or a stay as moot.[4]

ANALYSIS

I

In this case, the Court is asked to construe two provisions in the Michigan Constitution in the context of the initiative process. The first provision, Const 1963, art 2, § 9, states, in part:

The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject

---

[3] *Frey v Dep't of Mgmt & Budget,* 162 Mich App 586; 413 NW2d 54 (1987).

[4] Also, on September 8, 1987, the Court considered the request by the Governor that this Court authorize the Ingham Circuit Court to certify controlling questions. The request was denied on that date because the Ingham Circuit Court had entered a judgment in this case on July 1, 1987.

laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may enact under this constitution. The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than eight percent for initiative and five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.

* * *

Any law proposed by initiative petition shall be either enacted or rejected by the legislature without change or amendment within 40 session days from the time such petition is received by the legislature. If any law proposed by such petition shall be enacted by the legislature it shall be subject to referendum, as hereinafter provided.

If the law so proposed is not enacted by the legislature within the 40 days, the state officer authorized by law shall submit such proposed law to the people for approval or rejection at the next general election. . . .

Any law submitted to the people by either initiative or referendum petition and approved by a majority of the votes cast thereon at any election shall take effect 10 days after the date of the official declaration of the vote. No law initiated or adopted by the people shall be subject to the veto power of the governor, and no law adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by three-fourths of the members elected to and serving in each house of the legislature.

The second provision is Const 1963, art 4, § 27, which states:

> No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.

Plaintiffs argue that the precedent for this case is found in *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947). In *Leininger,* we held that the title-object clause appearing in Const 1908, art 5, § 21 (now art 4, § 24) applied to initiated laws.

Defendants and intervening defendants argue that *Leininger* stands for the proposition that initiated laws must comply with the substantive requirements placed on the Legislature in art 4, but not the procedural limitations. Neither defendants nor intervening defendants cite any authority for this procedural/substantive distinction of *Leininger.* In following *Leininger,* this Court has never limited its holding to the substantive elements of art 4. See, e.g., *Woodland v Michigan Citizens Lobby,* 423 Mich 188, 216; 378 NW2d 337 (1985), *Michigan Farm Bureau v Secretary of State,* 379 Mich 387, 399; 151 NW2d 797 (1967), *State Highway Comm v Vanderkloot,* 392 Mich 159, 185; 220 NW2d 416 (1974), *Kuhn v Dep't of Treasury,* 384 Mich 378, 385; 183 NW2d 796 (1971), *Continental Motors v Muskegon Twp,* 376 Mich 170, 179; 135 NW2d 908 (1965), *Pillon v Attorney General,* 345 Mich 536, 543; 77 NW2d 257 (1956), *Michigan Public Serv Co v Cheboygan,* 324 Mich 309, 339; 37 NW2d 116 (1949), and *City of Jackson v Comm'r of Revenue,* 316 Mich 694,

711; 26 NW2d 569 (1947).[5] As shown by these cases, we have never adopted the distinction proposed by defendants and intervening defendants. We expressly reject that distinction.

II

Plaintiffs argue that the record of the Constitutional Convention of 1961 establishes that initiated laws enacted by the Legislature are subject to Const 1963, art 4, § 27. Plaintiffs assert that their contention is supported by the following colloquy appearing in the record of the debate on Const 1963, art 4, § 27:

> *Mr. Nord:* Now, I would like to raise this one further question, if I may, with Mr. Kuhn. Is it your understanding then that in the so called initiative the people could not enact a law which in terms, or else impliedly, repeals? In other words, in enacting a law, doesn't that include the possibility of enacting a new law, or amending or repealing an old law?
>
> *Mr. Kuhn:* If I understand the question correctly, they can enact a law which would repeal another law?
>
> *Mr. Nord:* Yes. The legislature can do that. They can enact a law which repeals in terms, or else impliedly, another law.
>
> *Mr. Kuhn:* Well, the people can do that, yes.
>
> *Mr. Nord:* If that's the case, doesn't it seem as though there is an inconsistency, in that in order to repeal a law under the initiative provision it

[5] *Leininger* has spawned a second line of cases regarding the remedial scope of the writ of mandamus. See, e.g., *Campbell v Judges' Retirement Bd,* 378 Mich 169; 143 NW2d 755 (1966), *Municipal Finance Comm v Marquette Twp Bd of Ed,* 337 Mich 639; 60 NW2d 495 (1953), *Labor Relations Div, Michigan Road Builders' Ass'n v State Labor Mediation Bd,* 330 Mich 176; 47 NW2d 1 (1951), and *Howard Pore, Inc v State Comm'r of Revenue,* 322 Mich 49; 33 NW2d 657 (1948). However, these cases are not relevant to the issue in this case.

requires 8 per cent, but in order to repeal it under the referendum provision it requires 5 per cent, and yet there's no difference between the initiative and referendum; they both require petitions?

*Mr. Kuhn: There is a difference, sir.*

*Mr. Nord: What is the difference?*

*Mr. Kuhn: The difference is the time limit. After a statute is passed by the legislature, there are 90 days before it goes into effect. And the reason for this 90 days is to give the people time to go out and get those petitions.*

*Mr. Nord:* Mr. Chairman, Mr. Kuhn, I understand that when there is a 90 day provision, that is the case. But am I mistaken in assuming that that has been stricken from the provision?

*Mr. Kuhn: Oh, no; that 90 days is still there.*

*Mr. Nord:* That is still in this proposal?

*Mr. Kuhn:* It is not in this particular article, *but it is in our article V, section 21, I believe.* [*Now, art 4, § 27.*]

*Mr. Nord:* Oh, I've got you, then. All right. Thank you.

*Chairman Bentley:* Is the gentleman from Lansing seeking recognition?

*Mr. Wanger:* Yes. A brief question for Mr. Kuhn, Mr. Chairman. Mr. Kuhn, isn't there another difference between initiative and referendum, namely: that referendum cannot result in having a statute on the books which it takes a popular vote to repeal? Whereas, the initiative, if the initiated statute is adopted, means that the people, in order to make any change in that statute, have to vote; and the legislature cannot vote to change it.

*Mr. Kuhn:* Well, not exactly. I'll try to explain this a little bit, Mr. Wanger. *If the legislature sees fit to adopt the petition of the initiative as being sent out, if the legislature in their wisdom feel it looks like it is going to be good, and they adopt it in toto, then they have full control. They can amend it and do anything they see fit.* But if they do not, and you start an initiative petition and it

goes through *and is adopted by the people without
the legislature doing it, then they are precluded
from disturbing it.* [Emphasis added. 2 Official
Record, Constitutional Convention 1961, p 2395.]

Quoting the Court of Appeals, plaintiffs state,
" 'this colloquy indicates clearly that the delegates
intended current art 4, § 27, to apply to
initiatives.' "

Defendants argue that this portion of the Consti-
tutional Convention record does not evidence an
intent to apply art 4, § 27 to initiative legislation.
Intervening defendants argue that the colloquy
above reflects the intent of the individual dele-
gates and is not relevant in construing the consti-
tution. Instead, intervening defendants argue that
the "Address to the People" should supersede
comments made by the delegates to the Constitu-
tional Convention. Intervening defendants quote
the following excerpt from the "Address to the
People" (now appearing textually as "Convention
Comments"):

> This is a revision of Sec. 1, Article V, of the
> present [1908] constitution eliminating much lan-
> guage of a purely statutory character. The new
> wording specifically reserves the initiative and
> referendum powers to the people, *limits them as
> noted,* and requires signatures equal to at least
> eight per cent of the electors last voting for gover-
> nor for initiative petitions and at least five per
> cent for referendum petitions.
> In the section is language which provides that
> the legislature must act upon initiative proposals
> within 40 session days, but may propose counter
> measures to the people. [Emphasis added. 2 Official
> Record, Constitutional Convention 1961, p 3367.]

We find the colloquy cited by plaintiffs to be
persuasive authority for applying Const 1963, art

4, § 27 to initiative laws enacted by the Legislature. The portion of the "Address to the People" quoted above is not conclusive because it is ambiguous. Arguably, the phrase *"limits them as noted"* taken out of the context of the record of the Constitutional Convention could permit the inference of an intent by the framers to restrict the limits on the initiative process to those mentioned in art 2, § 9. However, placing the "Address to the People" in the context of the intent of the framers as expressed at the Constitutional Convention, it becomes apparent that the framers intended art 4, § 27, to apply to initiated laws enacted by the Legislature.[6] The foregoing colloquy

---

[6] Intervening defendants quote the following from *Regents of the Univ of Michigan v Michigan,* 395 Mich 52, 59-60; 235 NW2d 1 (1975), to support their argument that we should look to the "Address to the People" instead of the convention record:

> Plaintiffs and defendants cite various portions of convention committee debates with equal authority for opposing views. The impact of some of the arguments diminishes or is nullified when the relevant debates are considered as a whole.
> The debates must be placed in perspective. They are individual expressions of concepts as the speakers perceive them (or make an effort to explain them). Although they are sometimes illuminating, affording a sense of direction, they are not decisive as to the intent of the general convention (or of the people) in adopting the measures.
> Therefore, we will turn to the committee debates only in the absence of guidance in the constitutional language as well as in the "Address to the People," or when we find in the debates a recurring thread of explanation binding together the whole of a constitutional concept. The reliability of the "Address to the People" (now appearing textually as "Convention Comments") lies in the fact that it was approved by the general convention on August 1, 1962 as an explanation of the proposed constitution. The "Address" also was widely disseminated prior to adoption of the constitution by vote of the people.

In this case, our reference to the Constitutional Convention proceedings is consistent with *Regents* because we find no clear guidance in the constitutional language or the "Address to the People." See also *Union Steam Co v Secretary of State,* 216 Mich 261, 266; 185 NW 353 (1921) (stating, "In cases of doubtful construction we may turn to the debates of the Constitutional Convention and to the history of the

cited by plaintiffs leaves no doubt as to the intent of the framers regarding the application of art 4, § 27 to initiated laws enacted by the Legislature. The framers did not think it was necessary to restate that "[n]o act passed by the legislature shall go into effect until 90 days after the final adjournment of the session of the legislature which passed such act," Const 1908, art 5, § 1, in the initiative-referendum provision of the 1963 Constitution because they intended the language in art 4, § 27 to apply.

We cannot ignore the Constitutional Convention record as suggested by defendants and intervening defendants because "[i]t is a fundamental principle of constitutional construction that we determine the intent of the framers of the Constitution and of the people adopting it." *Holland v Clerk of Garden City,* 299 Mich 465, 470; 300 NW 777 (1941). In addition, the Court in *Holland* quoted *Pfeiffer v Detroit Bd of Ed,* 118 Mich 560, 564; 77 NW 250 (1898), stating, in part:

> "In determining this question, we should endeavor to place ourselves in the position of the framers of the Constitution, and ascertain what was meant at the time; for, if we are successful in doing this, we have solved the question of its meaning for all time. It could not mean one thing at the time of its adoption, and another thing today, when public sentiments have undergone a change. *McPherson v Secretary of State,* 92 Mich 377 [52 NW 469 (1892)]." [*Holland, supra,* p 470.]

times"). In *Regents,* the plaintiffs and the defendants cited portions of the convention record with equal authority for opposing views. *Id.,* p 59. However, in this case, only plaintiffs cite evidence in the convention record that specifically mentions the applicability of art 4, § 27 to initiated laws enacted by the Legislature. In addition, the convention speaker relied upon by plaintiffs, Richard Kuhn, was in a unique position to have personal knowledge regarding the application of art 4, § 27 to initiated laws because he was a member of the Constitutional Convention Committee on Legislative Powers. 1 Official Record, Constitutional Convention 1961, p 149.

III

The record of the 1961 Constitutional Convention and the history of the changes made in the referendum-initiative provisions of the 1908 Constitution also demonstrate the framers' intent to give the Legislature the last word in determining when *any* law enacted by the Legislature should take immediate effect. The provision in the 1908 Constitution that reserved the powers of initiative and referendum to the people (art 5, § 1) stated, in part:[7]

> The legislative power of the state of Michigan is vested in a senate and house of representatives; but the people reserve to themselves the power to *propose* legislative measures, resolutions and laws; to enact or reject the same at the polls independently of the legislature . . . . *The first power reserved by the people is the initiative.* Qualified and registered electors of the state equal in number to at least 8 per cent of the total vote cast for all candidates for governor, at the last preceding general election at which a governor was elected, shall be required to propose any measure by petition . . . .
>
> If any law proposed by such petition shall be enacted by the legislature *it shall be subject to referendum, as hereinafter provided.* . . .
>
> \* \* \*
>
> The second power reserved to the people is the referendum. *No act passed by the legislature* shall go into effect until 90 days after the final adjourn-

---

[7] The powers of initiative and referendum were first reserved to the people of Michigan in the 1908 Constitution. The constitution adopted in 1908 provided for limited popular initiation of constitutional amendments, but not popular initiation of legislation. The 1908 Constitution was amended in 1913 to extend the people's reserved powers to statutory initiative and referendum. The previous Constitutions of 1835 and 1850 did not reserve such powers to the people. See Grossman, *The initiative and referendum process: The Michigan experience,* 28 Wayne L R 77, 79 (1981).

ment of the session of the legislature which passed
such act, except such acts making appropriations
and such acts immediately necessary for the pres-
ervation of the public peace, health or safety, as
have been given immediate effect by action of the
legislature. [Emphasis added.]

Const 1908, art 5, § 1, as quoted above, states,
among other things, that the people had reserved
the power to propose laws by initiative petitions. It
also demonstrates that an initiated law enacted by
the Legislature was subject to the referendum, as
later provided in the constitution. In the para-
graph reserving the power of referendum to the
people, the constitution provided that "*[n]o act*
passed by the legislature shall go into effect until
90 days after the final adjournment of the session
of the legislature which passed such act . . . ."
The 1908 Constitution *explicitly* limited the excep-
tions to the ninety-day rule of art 5, § 1 to those
acts "making appropriations and such acts imme-
diately necessary for the preservation of the public
peace, health or safety, as have been given imme-
diate effect by action of the legislature." Section 21
of art 5 explained how the Legislature may have
given immediate effect to a law.[8] It states, "[T]he
legislature may give immediate effect to acts mak-
ing appropriations and acts immediately necessary
for the preservation of public peace, health or
safety by a two-thirds vote of the members elected
to each house." These sections of Const 1908, art 5,
subject initiative petitions to the provisions regard-
ing the referendum. The referendum provision
states that an act may only take immediate effect
if it fits one or more of the designated categories:
appropriations, health, safety, or peace. Article 5
also states that the Legislature must pass an act
by two-thirds vote of each house to give the act

_____
[8] Now Const 1963, art 4, § 27.

immediate effect. Article 5 of the 1908 Constitution did not except the initiated laws enacted by the Legislature from the exclusive requirement that no law can take immediate effect without a two-thirds vote of the elected members of each house. If this case had arisen under the 1908 Constitution, art 5, §§ 1 and 21 would clearly prevent 1987 PA 59 from taking immediate effect.[9]

During the 1961 Constitutional Convention, the framers amended the initiative-referendum provisions in the constitution.[10] They noted that there had been a substantial amount of litigation, after the adoption of Const 1908, requiring the court to decide whether an act had made an "appropriation" or was "for the preservation of the public peace, health or safety."[11] In those cases, this Court stated that the judiciary had the power to determine whether an act had made an "appropriation" or was "for the preservation of the public peace, health or safety," within the meaning of the 1908 Constitution. We also stated that the Legislature had the power to decide the immediacy of the need for an act.[12] The Legislature's power to give immediate effect to an urgently needed act could only be exercised within the limits of art 5, §§ 1 and 21, namely, by passing an initiated law by a two-thirds vote of the elected members of each house.[13]

---

[9] See *Todd v Hull,* 288 Mich 521, 542; 285 NW 46 (1939), stating that Const 1908, art 5, § 21 must be considered in connection with § 1.

[10] The initiative-referendum provisions appear in Const 1963, art 2.

[11] See 2 Official Record, Constitutional Convention 1961, p 2955. The framers noted that the Legislature had frequently strained the definition of these words to give immediate effect to certain laws.

[12] 2 Official Record, Constitutional Convention 1961, p 2956. See also *Heinze v St Joseph Twp School Dist No 1,* 336 Mich 552, 555; 58 NW2d 920 (1953); *Todd v Hull,* n 9 *supra,* p 542; *Industrial Bank of Wyandotte v Reichert,* 251 Mich 396, 400; 232 NW 235 (1930); *Newberry v Starr,* 247 Mich 404, 412; 225 NW 885 (1929).

[13] Defendants and intervening defendants make an argument re-

The framers decided to eliminate the requirement that an immediate effect act be an "appropriation," or "for public peace, health, or safety." This action was taken because of the large amount of litigation over the definitions of these words and the Legislature's need to grant immediate effect to acts that could not fit any of these categories.[14] This action eliminated the need for the judiciary to decide whether an act had made an "appropriation" or was "for the public peace, health or safety." It also enabled the Legislature to give immediate effect to any urgently needed legisla-

garding semantics. Relying on *Decher v Secretary of State,* 209 Mich 565; 177 NW 388 (1920), defendants argue that the word "act" as used in Const 1963, art 4, § 27, does not apply to initiative legislation. In *Decher,* p 577, we held that a resolution by the Michigan Legislature to ratify an amendment to the United States Constitution was not an "act" subject to referendum under Const 1908, art 5, § 1 (now Const 1963, art 2, § 9). As stated by the Court of Appeals, "[t]o the extent that *Decher* stated that the word 'act' in art 5, § 1 'had in mind a statute or law passed with the formality required by the Constitution and approved by the governor,' this is dicta and does not control the instant case."

Intervening defendants argue that the terms "pass" and "enact" are not synonymously used in the constitution. They argue that "pass" should apply only to the bill process since it appears only in art 4. However, "enact" is a broader term that appears in articles 2 and 4, and refers to both the bill and initiative processes. Therefore, they argue, "pass" should be construed to apply only to the bill process. We reject this tenuous distinction. Other provisions of the constitution use the terms "pass" and "enact" synonymously. See, e.g., Const 1963, art 3, § 8. In addition, we can find no authority, nor do intervening defendants provide any, to support such a distinction.

[14] This problem is exemplified in the following statement by a delegate:

*Mr. Hutchinson:* [T]he specified categories are not broad enough to be realistic, in my view, today. For instance, every tax bill that the legislature passes needs to be given a particular effective date, either the first of the fiscal year or the first of October or the first of January; some set date which, from a fiscal standpoint, is sound. In order to do that, the legislature has to give tax bills immediate effect. Well, as a matter of fact, they don't fall into any one of these categories . . . . [2 Official Record, Constitutional Convention 1961, p 2955.]

tion, regardless of its substance.[15] Several delegates expressed concern that granting the Legislature the power to give immediate effect to any law would endanger the referendum because it would not give the people time to gather signatures for petitions to prevent the law from going into effect.[16] Also, there was the danger that statutes would be passed without giving people adequate time to become acquainted with the statutes and adjust to them before they went into effect.[17] To reduce this danger, the framers decided to maintain the requirement that *no act* passed by the Legislature could take immediate effect unless passed by a two-thirds vote of the elected members of each house.[18] Consequently, no exceptions to this requirement were placed in the 1963 Constitution.[19]

IV

If 1987 PA 59 were allowed to take immediate effect, it would create an anomalous result. It would permit a law, signed by eight percent of the voters, to take immediate effect without the two-thirds requirement being met; however, a similar law that had been placed on the ballot and approved by a majority of the voters would not take effect until ten days after the date of the official declaration of the vote.[20] Such result would undermine the policy of requiring a two-thirds vote of each house before an act may take immediate

[15] *Id.,* pp 2955-2956.

[16] *Id.,* p 2956. This purpose was also stated in *Price v Hopkin,* 13 Mich 318, 325 (1865).

[17] *Id.,* p 2955. See also *Attorney General v Lindsay,* 178 Mich 524, 529; 145 NW 98 (1914).

[18] *Id.,* p 2956.

[19] See Const 1963, art 4, § 27.

[20] Const 1963, art 2, § 9.

effect. We do not think this was the intent of the framers. Furthermore, as stated by the Court of Appeals, "[i]f there is such a waiting period for a law which has been voted on by a majority of the electorate, there is even more reason to have a waiting period for a law which has garnered the vote of only eight per cent of registered electors."[21]

V

Plaintiffs argue that the rules of constitutional construction and textual analysis compel the conclusion that 1987 PA 59 is not yet effective. Defendants and intervening defendants argue that this Court must be guided by the "common understanding" rule, requiring the Court to interpret the constitution as the great mass of the people would interpret it. Both arguments reflect longstanding principles of constitutional interpretation.

In one of the earliest cases to come before this Court we stated that constitutional provisions must be construed with reference to each other when relating to the same subject matter. *Root v Mayor,* 3 Mich 433 (1855); see also *Thoman v City of Lansing,* 315 Mich 566; 24 NW2d 213 (1946), *Oakland Co Comm'r v Oakland Co Executive,* 98 Mich App 639; 296 NW2d 621 (1980), *Saginaw Co v State Tax Comm,* 54 Mich App 160; 220 NW2d 706 (1974), aff'd 397 Mich 550; 244 NW2d 909 (1976), and *Jones v City of Ypsilanti,* 26 Mich App 574;

---

[21] Intervening defendants argue that the ten-day period is intended to provide a period of time during which voters may demand a recount if they believed there was fraud or error committed in returning or canvassing the votes. They cite chapter 33 of the Michigan Election Law, 1954 PA 116; as amended, MCL 168.861 *et seq.;* MSA 6.1861 *et seq.,* as authority for their argument. However, in reviewing this section of the Michigan Election Law, we did not find any reference to the reason for the ten-day delay in effect for laws approved by a majority of the voters. Consequently, we find that this section of the Michigan Election Law does not provide authority for intervening defendants' argument.

182 NW2d 795 (1970). Article 2, § 9 refers to an initiated law enacted by the Legislature. Article 4, § 27, states the prerequisites that must be met before *any* law passed by the Legislature may take immediate effect. We are required by *Root,* etc., to harmonize these provisions, giving effect to both. Following these cases, we must hold that art 4, § 27 applies to initiated laws enacted pursuant to art 2, § 9. This interpretation is also in accordance with the "common understanding rule" cited by intervening defendants. We are limited to the language of the constitution when interpreting its provisions. In this case, art 4, § 27 contains a general restriction that "no act" passed by the Legislature may take immediate effect unless passed by a two-thirds vote of each house. The common understanding of this provision is that it applies to initiated laws enacted by the Legislature because it does not provide an exception for initiated laws enacted by the Legislature.[22]

## VI

Plaintiffs argue that authority from other states supports the decision of the Court of Appeals. Plaintiffs rely on *Thompson v Alameda Co Bd of Supervisors,* 180 Cal App 3d 555; 225 Cal Rptr 640 (1986). In *Thompson,* the county board of supervisors enacted an initiative that reapportioned the county's voting districts. The initiative provided that it was to become effective "immediately upon its passage by the voters." However, the ordinance as enacted by the board "provided that it was to be

---

[22] Defendants and intervening defendants differ on their suggested interpretations of art 4. Defendants argue that art 4 is only applicable to the legislative branch of state government. On the other hand, intervening defendants argue that there is no wall between art 2 and art 4, and certain art 4 procedural limitations apply to the art 2 initiative process.

'effective' thirty days after its adoption." *Id.,* p 559.
On appeal, appellants argued that the board failed
to enact the initiative "without change" as re-
quired by a state statute. *Id.,* p 560. A California
Court of Appeals upheld the board's action, hold-
ing that the change in the effective date was
mandated by the state statute which required
ordinances to become effective thirty days from
the date of final passage. It also held that the
board had made "no changes in the substantive
law" when it set an effective date that was differ-
ent from the effective date placed on the petition.
*Id.,* p 561.

Defendants state that the Court of Appeals
erred in relying on *Thompson,* because it has no
relevance to the issue in this proceeding. In addi-
tion, intervening defendants argue that a Califor-
nia decision on a California statutory initiative
process for county ordinances does not "govern" a
question of Michigan constitutional law.

We are not bound by the California court's
decision in *Thompson;* however, we do find the
rationale of *Thompson* persuasive. As stated by
the Court of Appeals:

The court [in *Thompson*] noted that California
has an "indirect initiative system" wherein, before
an initiative can go before the people for a vote, it
must be presented to and rejected by the legisla-
ture. Since the initiative had been presented to
and enacted by the legislature, it was subject to
the thirty-day provision of the code. *Id.,* 561. The
court noted that, when the board enacted the
initiative ordinance, it made no change in the
substantive law. *Id.,* 561. Defendants' and inter-
vening defendants' attempts in the instant case to
distinguish *Thompson* because it involved a con-
flict between the language on an initiative petition
and a California statute, rather than a conflict
between two constitutional provisions, are not per-

suasive. *Thompson* stands for the proposition that immediate effect language in an initiative is not part of the proposed law and to adopt the proposed law without the immediate effect language does not violate the requirement that the Legislature adopt the proposed law "without change or amendment." [*Frey v Dep't of Mgmt & Budget,* 162 Mich App 586, 597-598; 413 NW2d 54 (1987).]

According to the parties, *Thompson* appears to be the only opinion in the United States that addresses the effective date of an initiated law. We agree.

VII

Intervening defendants argue that there are no limitations on the initiative process unless they are noted in art 2, § 9. We do not agree. As stated in *City of Ecorse v Peoples Comm Hosp Authority,* 336 Mich 490, 502; 58 NW2d 159 (1953), the maxim *expressio unius est exclusio alterius* cannot be strictly applied when construing provisions of a state constitution, where to do so would do manifest violence to the plain intent of the framers. Furthermore, if we were to accept the argument presented by intervening defendants we would, in effect, hold that the constitution does not provide rules of procedure for the Legislature when the Legislature enacts an initiated law. This would mean that none of the procedural rules of art 4 including the rules regarding time of convening (art 4, § 13), quorums (art 4, § 14), notice of hearings (art 4, § 17), and open meetings (art 4, § 20), apply to the Legislature when it votes to enact an initiated law. We do not believe the framers intended to leave such a void in the constitution.

Defendants and intervening defendants argue that we should not hold that art 4, § 27 applies to

art 2, § 9 because the Attorney General has never ruled so. Attorney General opinions are not binding on this Court. See, e.g., *Traverse City School Dist v Attorney General,* 384 Mich 390, 412; 185 NW2d 9 (1971). Even if they were binding, there is no Attorney General opinion that contradicts our holding that art 4, § 27 applies to initiated laws enacted by the Legislature. As of the present, the Attorney General has not issued an opinion on point with the issue in this case.[23]

## VIII

As stated by the Court of Appeals, to hold that art 4, § 27 applies to initiatives is consistent with the concept that the initiative process should "be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises." *Scott v Secretary of State,* 202 Mich 629, 643; 168 NW 709 (1918). We, too, uphold the right of the people to initiate legislation. We only hold that when an initiated law is enacted by the Legislature, it is subject to art 4, § 27. This holding does not frustrate the ultimate right of the people to have their proposals placed on the ballot at the next general election if the proposal is rejected by the Legislature.

The language of art 2, § 9 does not conflict with the language of art 4, § 27 that requires a two-thirds vote to give a law immediate effect. The policy reasons for requiring the two-thirds vote are no less compelling when the Legislature is voting

[23] In OAG, 1963-1964, No 4313, p 365 (April 9, 1964), the Attorney General issued an opinion regarding the effective date of an initiated law enacted by the Legislature. In that opinion, the Attorney General concluded that "[c]onsideration must also be given to Article IV, Sec 27 of the Michigan Constitution of 1963 . . . ." *Id.,* p 367. However, the initiative petition in that case did not contain the crucial language in issue here, namely, the petition did not state that the act was to take immediate effect. *Id.,* p 365.

on an initiated law than when it is voting on a noninitiated law.

Defendants and intervening defendants argue that the Legislature had to enact the initiated law "without change or amendment" as required by art 2, § 9. The trial court agreed. In this case, there was no change in the substance of the initiated law as enacted by the Legislature. The language at the bottom of the petition stating "this act shall take immediate effect," could only be given effect by a two-thirds vote of each house. In addition, as stated by the Court of Appeals:

> We have no question that the people who signed the initiative petition in the instant case intended the act to have immediate effect. However, that fact is not dispositive. Since the constitution does not permit this to happen without a two-thirds vote of the Legislature, neither the people who signed the petition nor this Court can give effect to that intention. A constitution which is adopted by a majority of the people places limitations upon the people. For example, the people are prohibited from initiating legislation which cannot be adopted by the Legislature. Any limitations placed upon either the government or the people in a constitution can only be changed by a constitutional amendment. [*Frey, supra,* p 602.]

Although the petition contained the words, "this act shall take immediate effect," it did not give the initiators a right to expect that they would get a two-thirds vote from each house any more than they had a right to expect a majority of the members to vote in favor of enacting the initiative into law.

Intervening defendants argue that the distinction between proposing an initiated law and enacting an initiated law is not relevant to the effective date of 1987 PA 59. We disagree. This distinction

is central to this case. If the people had enacted 1987 PA 59, then there would be no question that this act would take effect in ten days. See art 2, § 9. However, here the people have proposed but the Legislature has enacted the initiated law. Consequently, art 4, § 27 prevents this act from taking effect until ninety days after the adjournment of the Legislature which passed it.

### CONCLUSION

We hold that when a law is proposed by initiative and enacted by the Legislature without change or amendment within forty days as required by art 2, § 9, it goes into effect ninety days after the end of the session at which it was passed unless the Legislature, pursuant to art 4, § 27, gives the law immediate effect by a two-thirds vote of the members in each house. Therefore, 1987 PA 59 may not go into effect until ninety days after the end of the session in which it was enacted because it did not receive a two-thirds vote in favor of immediate effect by the elected members of each house of the Legislature. We affirm the decision of the Court of Appeals.

RILEY, C.J., and LEVIN, BRICKLEY, and BOYLE, JJ., concurred with ARCHER, J.

CAVANAGH, J. (*dissenting*). This case has attracted much public attention because of the controversial subject matter of this particular initiative petition. As the majority emphasizes, however, this Court is not reviewing the wisdom of the substance of this initiative. We are simply determining how this and future initiative petitions attain immediate effect.

The issue is whether Const 1963, art 4, § 27 governs initiative petitions which state that "[t]his

act shall take immediate effect." Art 4, § 27 provides:

> No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.

I dissent from the majority's conclusion that art 4, § 27 applies to an initiative petition which contains immediate effect language. Rather, I agree with the interpretation given to that provision and to Const 1963, art 2, § 9 in the opinion of the circuit court and in the Court of Appeals dissent.

There is no dispute that an initiative petition, once enacted, is "on equal footing" with acts that originated in the Legislature. *Advisory Opinion on Constitutionality of 1982 PA 47,* 418 Mich 49, 66; 340 NW2d 817 (1983). The Court of Appeals misapplied this principle, however, by concluding:

> Either article 4, § 27 applies to all initiatives or it applies to none. It cannot apply only to initiatives which do not specify an effective date, since that would not provide stability to initiatives and assure that laws proposed by initiatives are on an equal footing with acts of the Legislature not proposed by the people. [162 Mich App 586, 600; 413 NW2d 54 (1987).]

The requirement that a law originating through an initiated petition not have greater legal effect than nonpublic-initiated laws does not mean that the former cannot evolve through a different process. This is in fact what happens.

Art 2, § 9 begins with the following language:

The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative . . . .

By voting to adopt the Michigan Constitution with this provision included, the people of Michigan chose to reserve for themselves the right to enact and reject laws, rather than leave that right exclusively with the Legislature. In *Woodland v Michigan Citizens Lobby,* 423 Mich 188; 378 NW2d 337 (1985), both the majority and the dissent recognized the importance of the power reserved in the initiative provision. It "serves as an express limitation on the authority of the Legislature." *Id.* at 214. "The importance of the power of initiative in Michigan's constitutional scheme cannot be overemphasized. In a democracy, governmental power ultimately rests with the people, and art 2, § 9, reflects this principle." *Id.* at 243 (opinion of WILLIAMS, C.J.).

Through art 2, § 9, the public has also indicated that when asserting its reserved right to enact and reject laws, it will follow a process different than the Legislature's. There was reference to this point during the Senate's consideration of the petition:

The people have gone to the streets with petitions because of our inability—this body's collective inability to resolve this problem.

The Senator from Ann Arbor said that it's an unusual procedure because we're excluding the Governor. That, Senator, is what the constitution gives the people the right to do. Article 2, of the Constitution is separate from Article 9, which is the normal process of passing laws that we deal with everyday. [1987 Journal of the Senate 1771-1776 (No. 59, June 17, 1987).]

One of the differences in the initiative process is that the public does not need to seek the Gover-

nor's approval. Art 2, § 9 provides that, unlike other legislation:

> No law initiated or adopted by the people shall be subject to the veto power of the governor.

Also, art 2, § 9 reveals another unique quality of the initiative:

> Any law proposed by initiative petition *shall be either enacted or rejected by the legislature without change or amendment* within 40 session days from the time such petition is received by the legislature. [Emphasis added.]

The above language indicates that the public meant to reserve for itself the power to submit a petition to the Legislature in the exact form and language the public desired. In this case, the immediate effect language was part of the petition submitted for the Legislature's approval, and the petition's supporters risked having it rejected by adding that condition. By the same token, if the petition passed, the petitioners' intent to give it immediate effect also should be honored.[1]

The prohibition against legislative change or amendment is consistent with the unique function of the initiative. The initiative is the public's remedy when the Legislature refuses to act regarding an issue of public concern:

> [T]he initiative process is intended as a last resort for the people when the Legislature fails to act on issues which . . . inflame the citizenry on a grass-roots level . . . . [*Woodland, supra* at 218.]

Subjecting an initiative petition with immediate

---

[1] To hold to the contrary would mean that the Legislature could also ignore a specific effective date and substitute any date it chose.

effect language to art 4, § 27 could frustrate the will of the petitioners and the initiative process.

Even the Legislature recognized the significance of the immediate effect language. After the petition passed in the House and Senate, each house, by majority vote, declined to move for immediate effect of the act under art 4, § 27, because to do so would have been "a nullity due to the fact that the initiatory petition call[ed] for immediate effect." 1987 Journal of the Senate 1771 (No. 59, June 17, 1987). See also 1987 Journal of the House 1964 (No. 63, June 23, 1987).

The Legislature's decision not to vote on the immediate effect language not only supports the appellants' position, it merits at least some judicial deference. The Legislature has indicated how it wants to interpret a constitutional provision (art 4, § 27) within the section of the constitution entitled "Legislative Branch." Both houses, when confronted with a choice whether to vote on the immediate effectiveness of the petition, declined to do so because the language in the petition already provided for this. The judicial branch cannot lightly dismiss another branch's determination of law reached through formal vote.

The Court of Appeals further erred by finding it inconsistent to apply art 4, § 27 to initiatives without immediate effect language, while not applying the provision to those with such language. In OAG, 1963-1964, No 4313, p 365 (April 9, 1964), Attorney General Frank Kelley concluded that an initiative petition without immediate effect language was governed by art 4, § 27. There is nothing inconsistent with that opinion and the present dissent. When the people indicate that the initiative is to take immediate effect, then the entire petition, which includes that language, either is

passed or rejected under art 2, § 9. That provision clearly sets forth the procedure for doing so. Likewise, when such language is absent from an initiative petition, the entire petition still is either passed or rejected under art 2, § 9, and then, if enacted, is subject to art 4, § 27, like other acts. In other words, whatever is included within the language of the petition is subject exclusively to art 2, § 9, which does not require that the immediate effect language be voted on.

The Court of Appeals reliance on a discussion between two 1961 Constitutional Convention delegates was also unpersuasive. The Court quoted one delegate who indicated the ninety-day wait in art 4, § 27 was intended to govern initiatives as well as acts originating in the Legislature. The Court of Appeals concluded that "[t]his colloquy indicates clearly that the *delegates intended* the language currently found in Const 1963, art 4, § 27 to apply to initiatives." (Emphasis added.) 162 Mich App 595. The colloquy indicated only one delegate's intent, and on a point not directly at issue here. Further, the constitutional convention debates should not be relied on for guidance as if they were analogous to a statute's legislative history. When a statute is scrutinized, the intent of the legislators is relevant because they are the people who voted to enact the law. The people who adopted the 1963 Michigan Constitution, however, were not just the delegates attending the 1961 convention. In other words, "convention delegate intent" is not analogous to legislative intent.

The "Address to the People," which was circulated after the convention, reveals what the voting public relied on in deciding whether to adopt the 1963 Constitution. There were annotations in the address which followed the text of each constitu-

tional provision.[2] Not surprisingly, the annotations following art 2, § 9 do not discuss the method by which an initiative petition can take immediate effect. Similarly, the annotation of art 4, § 27 makes no reference to the initiatives. Thus, there is nothing in the "Address to the People" which indicates that the voters intended, or knew, that art 4, § 27 would govern those initiatives in which the public has chosen to include immediate effect language.

I would reverse the decision of the Court of Appeals and reinstate the circuit court's order granting summary disposition to defendants.

GRIFFIN, J., took no part in the decision of this case.

---

[2] Each of these annotations are reprinted at the end of each constitutional provision in both Michigan Compiled Laws Annotated and Michigan Statutes Annotated, as a "Convention Comment."